[No. 1646.]

## THE STATE OF NEVADA, EX REL. CITY OF RENO, RELATOR, *v.* D. B. BOYD, AS COUNTY TREASURER OF WASHOE COUNTY, RESPONDENT.

MUNICIPAL LICENSES—PROCEEDS—DISTRIBUTION—DUE PROCESS OF LAW.

1. Stats. 1903, p. 190, c. 102, sec. 20, subd. 9, providing that moneys received from licenses in cities shall be apportioned one-fourth to the state, one-fourth to the county in which the city is located, and the remainder to the city, is in contravention of Bill of Rights, sec. 8, declaring that no person shall be deprived of property without due process of law, and that private property shall not be taken for public use without compensation.

APPLICATION by the State, on relation of the City of Reno, against D. B. Boyd, as Treasurer of the County of Washoe, for a writ of mandate. **Writ granted.**

The facts sufficiently appear in the opinion.

*Thomas Wren* and *E. L. Williams,* City Attorney, for Relator:

I.   The ninth subdivision of section 20 of the act incorporating the city of Reno is unconstitutional. It violates section 17, article IV, of the constitution. The object of the act is to incorporate the city of Reno; it provides for a governing body and other necessary officers to carry on the business of the corporation, and, as incidental and necessary thereto, for the raising of revenue to pay the expenses of the local government of the territory embraced within the city limits. To paraphrase the language used in the numerous decisions of this court in passing on this section of the con-

stitution, it should embrace only the incorporation of the territory embraced in the act and matters properly connected therewith and germane to the object for which the act was passed. The section of the constitution that it violates is so plain that "he that runneth may read"; the only difficulty is its application to each case as it arises. In the present case, there should be no difficulty in its application. The proviso contained in the ninth subdivision of section 20 directs that a portion of the moneys raised by the collection of a license tax, the whole of which should be devoted to pay the expenses of the city government of Reno, shall be set aside—a portion one-quarter to the state and one-quarter to the county of Washoe. Now, manifestly, this proviso, in so far as it directs a portion of the money collected for licenses to be apportioned to the state and the county of Washoe, has for its purpose connected with the power to collect a license tax, the raising of money, revenue for the state and for the county of Washoe, and that purpose is not expressed in the title directly nor indirectly.

II. It violates section 21 of article IV of the constitution. The provision in question is intended to provide revenue for the state and the county of Washoe. Laws for that purpose must be general and operate, so far as the revenue for state purposes is in question, equally and uniformly upon all the citizens of the state, and a license tax to raise revenue for county purposes, under a just construction of the constitutional provisions, must operate equally and uniformly on the taxpayers in each of the counties of the state in all cases where a license tax is collected for a county purpose. This has been the uniform construction of the constitutional provision in relation to taxes of all kinds ever since the organization of the state government. Under the constitution, a license tax for state and county purposes, mainly for county purposes, with the exception of one or two inconsiderable laws providing for a license tax, devotes all of the money raised by licenses to county purposes. It is all by the laws authorizing licenses devoted to county purposes, except in the case of liquor licenses in incorporated cities. The proviso in question, if valid, would compel the business people of Reno, in addition to the state and county licenses now paid

under the general law for state and county purposes, to pay an additional license tax, also in part for state and county purposes. This, we submit, is a palpable violation of the constitutional provisions both in letter and in spirit.

III. The proviso in question violates article X, section 1 of the constitution. That section requires the legislature to provide for a uniform and equal rate of taxation. A provision for the collection of licenses is a tax under the general definitions given of a tax. The subdivision of the general revenue law providing for the collection of licences is under the title of "license tax," and this court, in one or more of its decisions, has called it a license tax, and there is quite as much need of limiting the legislature in providing for the collection of licenses to require that the tax should be equal and uniform as there is that any other tax should be equal and uniform. We assume, then, that licenses are a species of taxation, and that section 1 of article X, in using the term taxes, uses it in its broadest signification. In view of the language of this section, and the uniform construction of it ever since the state government was organized, we submit that it requires the legislature in authorizing the collection of licenses for state and county purposes to see to it that these operate equally and uniformly on all of the citizens of each county and of the state, and that, in authorizing incorporated and unincorporated towns and cities to collect a license, the law must operate equally and uniformly upon all of the citizens of each of the incorporated and unincorporated towns respectively, and that the money collected for licenses shall be devoted to the payment of the expenses of the government of the respective cities and towns. No one would seriously contend that this proviso does not violate the spirit of the constitutional provision in relation to taxation. Further along in this brief, we think we shall be able to show that the court in construing the repugnant sections of the act—*i. e.*, the proviso in subdivision 9 of section 20 and section 28 of the act—should give great weight to the fact that the proviso in subdivision 9 does violate the spirit of the constitution.

IV. Subdivision 8 of section 20 of the act incorporating the city of Reno and section 22 of the same act are utterly

repugnant to each other. It is impossible to reconcile sub-
division 8 and section 22 without doing violence to plain
English. Section 22 provides that all moneys collected for
the city of Reno shall be placed in Reno general fund. The
language used in this section in regard to the disposition of
money collected for city licenses and from other sources of
revenue for city purposes is a verbatim copy of section 2706
of the Compiled Laws of Nevada contained in the act for
the government of unincorporated towns and cities under
which unincorporated towns and cities have been governed
and under which the moneys collected from every source of
revenue, licenses and all, have been paid by the collecting
officers and apportioned to funds for the benefit of the
respective towns and cities ever since the law was passed in
1881, with the exception of the designation of the officers
receiving the funds for the town government, and other
changes not bearing upon the controversy here. The many
years of construction given to this section of the act for the
government of unincorporated towns and cities should settle
the construction to be given to the conflicting provision in
the act incorporating the city of Reno. It will be seen by
even a cursory examination of the act incorporating the city
of Reno that with subdivision 8 of section 20, or, rather,
with the proviso in said subdivision stricken out, there will
be left a law complete and operative in every respect to carry
out the objects for which the act was passed. It would be a
work of supererogation to cite the many cases decided by
this court in which it has been held that where the repugnant
provision of an act may be stricken out without destroying
the efficiency of the act, the balance of the act will be held
to be constitutional. Where one section of an act is repug-
nant to some other provision of a section of an act, or, in
other words, if a statute attempts to accomplish two or more
objects, or to deal with two or more independent subjects,
and the provisions as to one are void, it may still be in every
respect complete and valid as to any other. (Sutherland,
Stat. Constr. sec. 170.) The constitutional and unconstitu-
tional provisions may be expressed in the same section, and
yet be perfectly distinct and separable, so that the first may
stand though the last fall. In interpreting the doubtful

statutes, the primary object is to ascertain the intent of the
legislature. This intent is to be gathered, first, from the
language of the statute, and, next, from the benefits to be
obtained. It should be construed, if possible, so as to secure
the object intended to be secured. The intent of the legis-
lature was to give to the inhabitants of the territory embraced
in the corporate limits local self-government; to provide the
necessary officers to carry on the government; to give to the
council legislative powers, and to raise revenue for the sup-
port of the government. The courts should adopt that con-
struction that is consonant with the general purpose of the
law. (*Maynard* v. *Johnson*, 2 Nev. 25; *Brown* v. *Davis*, 1
Nev. 409; *Odd Fellows' Bank* v. *Quillen*, 11 Nev. 109; *V. &
T. R. R. Co.* v. *Lyon Co.*, 6 Nev. 68; *Heydenfeldt* v. *Dana G.
& S. M. Co.*, 10 Nev. 313.) In adjusting the general pro-
vision in a general act to another section in the same act,
considerations of reason and justice are proper to be borne
in mind, and ought to have much weight and force. (Suth-
erland, Stat. Constr. p. 287.) In determining the scope of
general provisions in a statute, there is a leaning to prevent
absurdity, for it cannot be intended; also in justice for a like
reason. (Id. 289.) Where one part of an act is in conflict
with another, the last one in position in the act is deemed to
render the other nugatory, or to repeal it. (*Packer* v. *Sund-
berg R. R. Co.*, 19 Pa. St. 211; *Ryan* v. *State*, 5 Neb. 276,
282; *Gibbons* v. *Brittum*, 56 Miss. 232; *Harrington* v.
*Rochester*, 10 Wend. 547; *Commercial Bank* v. *Chambers*, 8
S. N. & M. 9; *Brown* v. *County Commissioners*, 21 Pa. St. 37;
*Quick* v. *White Water Township*, 17 Ind. 570; *Albertson* v.
*State*, 9 Neb. 429; *Sands* v. *King*, 18 Fla. 557; *Branigan* v.
*Delaney*, 8 Col. 408; *Farmers Bank* v. *Hale*, 59 N. Y. 53.)
In construing a doubtful statute, it must be done with ref-
erence to the leading idea or purpose of the whole instrument.
The general intent should be kept in view in determining
the meaning and scope of any part. (*Ex parte Harrison*, 4
Cow. 63; *Martin* v. *Hunter's Lessee*, 1 Wheat. 326; *People*
v. *Stevens*, 13 Wend. 321; *People* v. *Morris*, 13 Wend. 325;
*Swartwoult* v. *R. R. Co.*, 24 Mich. 389.) The presumption is
that the lawmaker has a definite purpose in every enactment,
and has adapted and formulated the subsidiary provisions in

harmony with that purpose. (*Jackson* v. *Bradt*, 2 Cal. 303; *Foster* v. *Collner*, 107 Pa. St. 305; *State* v. *Mann*, 21 Wis. 681; *Chapman* v. *Miller*, 128 Mass. 269; *Converse* v. *U. S.*, 21 How. 163.) The definite purpose that the legislature had in view in passing the act incorporating the city of Reno is so plain that we have taken up too much space perhaps in pointing it out to this court already.

V. Where there are general provisions and statutes and a special provision in some cases, a presumption is raised that the intention of the legislature was to control the general provision by the special provision, but it is only a presumption, and when, as in this case, the reason for disregarding this reason is so overwhelming that, it seems to us, it is unnecessary to call attention to them.

VI. This proceeding is simply to compel an officer to perform the duty enjoined on him by a law. The county was represented and the state might perhaps have intervened. This court has pointed out in one case that the state might intervene. A decision in favor of the city would not conclude the state. It seems certain that the state might bring an action against the city for money had and received for the use and benefit of the state. As we understand it, the proceedings in the *mandamus* case, so far as pleadings and parties are concerned, are substantially the same as they are in civil cases. If, in the opinion of the respondent in this case, there was a defect of parties, he might have set that up by demurrer; failing to do so the right is waived.

*James G. Sweeney*, Attorney-General, and *W. H. A. Pike*, District Attorney of Washoe County, for Respondent:

I. The petition of the city of Reno should be denied because D. B. Boyd, as county treasurer of Washoe county, Nevada, and *ex officio* city treasurer of the city of Reno, complied with the provisions of the ninth subdivision of section 20 of that certain act of the legislature of the State of Nevada, approved March 16, 1903, entitled "An act to incorporate the town of Reno and to establish a city government therefor," by apportioning the sum of $397.50, said sum being the amount received from R. C. Leeper, chief of police of the said city of Reno, on the 22d day of July, 1903, to the

following funds, as follows, to wit:　One-quarter of the said sum, to wit, $99.37, to the State of Nevada; one-quarter of said sum, to wit, $99.37, to the county of Washoe, and one-half of said sum, to wit, $198.75 to the "Reno General Fund," as in said section 20 provided.

II.　The provisions of said ninth subdivision of section 20 of said act are so manifestly constitutional, mandatory and expresses so plainly the legislative will and intent, that we submit it as conclusive authority against the relief sought by petitioner.

By the Court, BELKNAP, C. J.:

This is an application for a writ of mandate requiring the treasurer of the county of Washoe to place all moneys collected from licenses by the city of Reno in the general fund of the city, and to hold the same subject to the payment of proper warrants.

Under the terms of the act incorporating the town of Reno, and establishing a city government therefor, approved March 16, 1903, respondent, in addition to his duties as treasurer of the county, was constituted *ex officio* city treasurer and tax receiver.　It appears by affidavit that, as *ex officio* city treasurer, he had, upon the 22d day of July last, $397.50 of the funds of the city, which had been collected for licenses.　By the provisions of subdivision 9 of section 20 of the charter (Stats. 1903, p. 190, c. 102), he is required, out of these moneys, to apportion one-quarter thereof to the State of Nevada, one-quarter to the county of Washoe, and the remainder to the general fund of the city.　Relator claims that the moneys raised by the city for licenses should be used for its benefit, and not for the benefit of the state or for Washoe county, and that the requirement is obnoxious to several provisions of the constitution of the state.

The purpose of an exaction from the public in the form of a tax or license, either for revenue or in the exercise of the police power, is for the benefit of the locality from which the money is collected.　Any exaction laid upon a district or community in which it has no interest, or imposed for the benefit of others, to which it is not justly bound to contribute, is invalid.　"If a single township," says Judge Cooley in his treatise on the Law of Taxation (page 141), "were to

be required to levy upon its inhabitants, and collect and pay over to the state, whatever moneys were necessary to pay the salaries of the several state officers, it would be apparent, 'at first blush,' that the enactment was not one which, either in its purpose or tendency, was to make the taxpayers of that township contribute only their several proportions to the public purpose for which the tax was to be levied. If, on the other hand, for the purpose of purchasing and ornamenting a city park, or any other improvement of mere local convenience, a tax should be imposed upon the whole state, it would be equally manifest that equality and justice were not the purpose of the imposition, but that, if carried into effect, the people of the state not residing in the city would be compelled to contribute to a purpose in which, in a legal sense, they had no interest whatever. * * * It can be stated with emphasis that the burden of a tax must be made to rest upon the state at large, or upon any particular district of the state, according as the purpose for which it is levied is of general concern to the whole state, or, on the other hand, pertains only to the particular district. A state purpose must be accomplished by state taxation, a county purpose by county taxation, or a public purpose for any inferior district by taxation of said district. This is not only just, but it is essential. To any extent that one man is compelled to pay in order to relieve others of a public burden properly resting upon them, his property is taken for private purposes, as plainly and as palpably as it would be if appropriated to the payment of the debts, or the discharge of the obligations which the person thus relieved by his payments might owe to private parties. 'By taxation,' it is said in a leading case, 'is meant a certain mode of raising revenue for a public purpose, in which the community that pays it has an interest. An act of the legislature authorizing contributions to be levied for a mere private purpose, or for a purpose which, though it be public, is one in which the people from whom they are exacted have no interest, would not be a law, but a sentence commanding the periodical payment of certain sums by one party or class of people to another.' This principle has met with universal acceptance and approval because it is as sound in morals as it is in law."

*In the Matter of Lands in the Town of Flatbush,* 60 N. Y. 398, it was decided that it was not within the power of the legislature to compel the adjoining town of Flatbush to be taxed for the payment of debts previously contracted for the city of Brooklyn. In the course of its opinion the court said: "There is no principle that I am aware of which sanctions the doctrine that it is within the taxing power of the legislature to compel one town, city, or locality to contribute to the payment of the debts of another. The government has no such authority, and this case is entirely without precedent. If such assessments were to be authorized, they might not be limited to adjoining towns, cities, or villages, but applied to those located at great distances from each other. Such legislation would be unjust, mischievous, and oppressive, and cannot be tolerated." See, also, *Farris* v. *Vaunier,* 6 Dak. 186, 42 N. W. 31, 3 L. R. A. 713; *Lexington* v. *McQuillan,* 9 Dana, 518, 35 Am. Dec. 159; *Cheaney* v. *Hooser,* 9 B. Mon. 345; *Ryerson* v. *Utley,* 16 Mich. 269; *Sanborn* v. *Comins,* 9 Minn. 273; *Bromley* v. *Reynolds,* 2 Utah, 525; Desty on Taxation, p. 26.

The requirement under consideration is in conflict with the terms of section 8 of the Bill of Rights, which provides that private property shall not be taken for public use without compensation.

It is ordered that the peremptory writ of mandate issue as prayed.

FITZGERALD, J. and TALBOT, J., concur.