CLEAN WATER COALITION, A NEVADA JOINT POWERS AUTHORITY, APPELLANT/CROSS-RESPONDENT, v. THE M RESORT, LLC, A NEVADA LIMITED LIABILITY COMPANY; PH METRO, LLC, A NEVADA LIMITED LIABILITY COMPANY; OVATION DEVELOPMENT CORPORATION, A NEVADA CORPORATION; JET HANGARS, LLC, A NEVADA LIMITED LIABILITY COMPANY; SUN CITY SUMMERLIN COMMUNITY ASSOCIATION, INC., A NEVADA NONPROFIT CORPORATION; AND HENDERSON CHAMBER OF COMMERCE, INC., A NEVADA NONPROFIT CORPORATION, RESPONDENTS/CROSS-APPELLANTS, v. STATE OF NEVADA, EX REL. THE LEGISLATURE OF THE 26TH SPECIAL SESSION OF THE STATE OF NEVADA; THE HONORABLE BRIAN E. SANDOVAL, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF NEVADA; THE HONORABLE KATE MARSHALL, IN HER OFFICIAL CAPACITY AS TREASURER OF THE STATE OF NEVADA; AND THE HONORABLE KIM R. WALLIN, IN HER OFFICIAL CAPACITY AS CONTROLLER OF THE STATE OF NEVADA, RESPONDENTS/CROSS-RESPONDENTS.

No. 57649

May 26, 2011                                        255 P.3d 247

*Parsons Behle & Latimer* and *Michael R. Kealy* and *Robert W. DeLong*, Reno, for Appellant/Cross-Respondent.

*Catherine Cortez Masto*, Attorney General, and *C. Wayne Howle*, Solicitor General, and *Blake A. Doerr*, Deputy Attorney General, Carson City, for Respondents Brian Sandoval, Kate Marshall, and Kim Wallin.

*Legislative Counsel Bureau Legal Division* and *Brenda J. Erdoes*, Legislative Counsel, and *Kevin C. Powers*, Senior Principal Deputy Legislative Counsel, Carson City, for Respondent Legislature of the State of Nevada.

*Kaempfer Crowell Renshaw Gronauer & Fiorentino* and *Jason Woodbury, Christopher L. Kaempfer*, and *Severin A. Carlson*, Las Vegas; *O'Reilly Law Group* and *John F. O'Reilly* and *Timothy R. O'Reilly*, Las Vegas, for Respondents/Cross-Appellants Henderson Chamber of Commerce, Inc.; Jet Hangers, LLC; Ovation Development Corporation; PH Metro, LLC; Sun City Summerlin Community Association, Inc.; and The M Resort, LLC.

*Elizabeth Macias Quillin*, City Attorney, and *Michael J. Oh*, Assistant City Attorney, Henderson, for Amicus Curiae City of Henderson.

*Nicholas G. Vaskov*, Acting City Attorney, and *Jeffrey F. Barr*, Deputy City Attorney, North Las Vegas, for Amicus Curiae City of North Las Vegas.

*John J. Kadlic*, City Attorney, and *Jonathan D. Shipman*, Deputy City Attorney, Reno, for Amicus Curiae City of Reno.

Before the Court EN BANC.

## OPINION

By the Court, HARDESTY, J.:

Confronting a statewide budget crisis, the Nevada Legislature, during the 2010 special session, undertook several revenue-adjustment and cost-cutting measures in an effort to balance the State's budget, which resulted in the enactment of Assembly Bill 6 (A.B. 6), 26th Special Session (Nev. 2010). Section 18 of A.B. 6 mandates the transfer of $62 million in securities and cash from a political subdivision of the State created by interlocal agreement into the State's general fund for the State's unrestricted, general use.

In this appeal, we are asked to consider whether A.B. 6, section 18 violates the fundamental law of the state—the Nevada Constitution. We recognize that the Legislature is endowed with considerable lawmaking authority under Article 4, Section 1 of the Nevada Constitution. But that authority is not without some restraints. Two such restrictions are contained in Article 4, Section 20, which prohibits, among other things, local and special laws for the ''assessment and collection of taxes for state . . . purposes,'' and Article 4, Section 21, which requires laws to be ''general and of uniform operation throughout the State'' in all cases ''where a general law can be made applicable.''

We conclude that A.B. 6, section 18 violates both. A.B. 6, section 18 converts $62 million collected by the Clean Water Coalition (CWC) as user fees into a tax that is contrary to Article 4, Section 20's prohibition against local or special taxes. Because A.B. 6, section 18 applies only to the CWC, and a general law could have applied, it also violates Article 4, Section 21's mandate that all laws shall be general and operate uniformly throughout the state in all cases where a general law can be made applicable. For those reasons, we reverse the district court's judgment declaring A.B. 6, section 18 constitutional.

### FACTS AND PROCEDURAL HISTORY

#### The Clean Water Coalition

The Clean Water Coalition was created pursuant to an interlocal cooperative agreement among four Nevada political subdivisions,

all located in Clark County: the Clark County Water Reclamation District and the cities of Henderson, Las Vegas, and North Las Vegas.[1] In accordance with NRS 277.080-.180, the four members agreed to form the CWC based on their "common environmental, economic and regulatory interest in the efficient and responsible collection, treatment, reuse and discharge of municipal [e]ffluent."[2] The agreement lists the CWC's conferred functions, the first of which is to implement the Systems Conveyance and Operations Program (SCOP), which involves planning, designing, financing, constructing, operating, and maintaining a regional system to convey effluent from existing and future wastewater treatment facilities to its ultimate outfall location in the Colorado River system. The interlocal agreement recognizes that the SCOP may include physical facilities such as pipelines and real and personal property, including leases of such property, permits, and licenses. Other CWC functions include managing effluent flowing through CWC facilities and contracting to sell or lease power produced from energy recovery facilities that might be constructed.

The CWC's powers include, among others, preparing, reviewing, approving, and implementing regional water quality plans; adopting and amending operating and capital improvement plans and budgets; financing facilities that may be needed to carry out its conferred functions, including funding all aspects of the SCOP; assessing members for their agreed share of administration, operation, maintenance, and capital costs; and establishing and adjusting regional sewer connection and user fees to defray CWC costs. Each of the CWC's members collected sewer connection and usage fees from households and businesses, including The M Resort and other cross-appellants, in their respective localities, and then paid the CWC with the funds from the collected fees, in part to finance

---

[1] The agreement forming the CWC became effective November 20, 2002. It was amended in September 2006 to add the City of North Las Vegas as a member and to establish a regional fee schedule. It was amended a second time on January 4, 2008, to provide for regional water quality and annual operating plans. As relevant here, the second amended agreement sets forth the CWC's creation, functions, powers, management, membership, administration, operation, and limitations.

[2] The Nevada Legislature recognized that interlocal agreements may further such common objectives by enacting the Interlocal Cooperation Act, codified at NRS 277.080-.180 (1965). The Act permits local governments to cooperate with each other to provide services and facilities in a way that accords "with geographic, economic, population and other factors influencing the needs and development of local communities." NRS 277.090. Under the Act, any one or more local governments may contract with each other to jointly perform any governmental service, activity, or undertaking, including sewer systems, and they may jointly use county and city personnel, equipment, and facilities to do so. NRS 277.180. The members of the interlocal agreement may support the administrative board created to operate the joint undertaking by, among other things, appropriating funds. NRS 277.170.

the building of the SCOP. The CWC had been collecting the fees since approximately November 2002,[3] but by October 2010, it stopped collecting. It is unclear whether the SCOP project has been put on hold indefinitely or terminated altogether.[4]

*Litigation over A.B. 6, section 18*

A.B. 6 was adopted and approved as part of the Legislature's effort to balance the state's budget during its 2010 special session. Section 18 of that bill requires the Clean Water Coalition, an entity created pursuant to interlocal agreement by the Clark County Water Reclamation District and the Cities of Henderson, Las Vegas, and North Las Vegas, to "transfer to the State of Nevada securities and cash which together total $62,000,000, for deposit in the State General Fund for unrestricted State General Fund use." In adopting A.B. 6, section 18(1), the Legislature found and declared that:

> (a) The transfer of money from the Clean Water Coalition to the State General Fund is necessary to ensure that the government of this State is able to continue to operate effectively and to serve the residents, businesses and governmental entities of this State;
>
> (b) The transfer of money from the Clean Water Coalition to the State General Fund will promote the general welfare of this State; and
>
> (c) A general law cannot be made applicable to the provisions of [Section 18] because of special circumstances.

Section 18 became effective on March 12, 2010, and that same day, the CWC filed a district court complaint against the State

---

[3]Between November 2002 and June 2007, the members charged sewer service users regional sewer fees to defray the cost of the CWC's activities and obligations. The members funded the CWC's operating and capital budgets on a pro rata basis from the collected fees. As of July 1, 2007, the CWC implemented "regional fees" for the purpose of funding CWC activities, operating costs, and debt reserves and funding, at which time the members' obligation to contribute their pro rata shares stopped, and they instead paid the CWC the fees set forth in the regional fees schedule, which were assessed as a $400 connection charge per equivalent residential unit, and a sewer usage charge of $0.105 per thousand gallons of untreated wastewater. Each member was permitted to choose a method to raise the funds needed to satisfy its regional fee obligation.

[4]The State has filed an addendum to its answering brief, which contains newspaper articles; meeting notices, agenda, and minutes from the hearings on the state budget before the interim finance committee; and minutes from CWC management board meetings, none of which were filed in the district court. The CWC requests that the addendum be stricken in part because the material therein was not before the district court. Having considered the request to strike, we grant it. *See Carson Ready Mix v. First Nat'l Bk.*, 97 Nev. 474, 476, 635 P.2d 276, 277 (1981).

seeking declaratory and injunctive relief, challenging section 18's constitutionality on numerous grounds, including that it violated Nevada Constitution Article 4, Section 20, prohibiting local and special laws for the assessment and collection of taxes, and Article 4, Section 21, prohibiting local and special laws where a general law can be made applicable.[5] The M Resort also filed a district court complaint against the State and the CWC, seeking injunctive and declaratory relief and damages, also based on allegations that section 18 is not constitutionally permissible legislation.[6] The two actions were consolidated, and the parties stipulated to other businesses (cross-appellants in this matter) intervening in the actions. The State answered the complaints and filed a counterclaim against the CWC, seeking a declaration that section 18 is constitutional and an order compelling the CWC to transfer the $62 million to the State's general fund, as mandated under the bill.

Subsequently, on cross-motions for summary judgment, the district court entered an order declaring A.B. 6, section 18 constitutional. The court made eight conclusions of law, all but one of which would support a determination that section 18 is unconstitutional as a tax upon only certain Clark County residents and businesses, or as a local or special law where a general law could have applied. Nonetheless, the court upheld the bill section because it could not conclude without a reasonable doubt that section 18 plainly conflicted with the Nevada Constitution, given its ultimate determination that "each political subdivision remains subject to the overriding sovereign control of statutes enacted by the Legislature." The court certified its judgment as final under NRCP 54(b) and, pursuant to the parties' stipulation, stayed enforcement of the judgment pending appeal. This appeal and cross-appeal followed.[7]

---

[5]In resolving the complaint, the district court did not specifically address the CWC's argument that A.B. 6, section 18 unconstitutionally impaired the CWC's interlocal agreement with its members, or its arguments that section 18 violated Nevada Constitution Article 1, Section 15 and Article 10, Section 1. By declaring the statute constitutional, however, the district court implicitly rejected these arguments.

[6]The M Resort also alleged breach of contract against the CWC as a third-party beneficiary of the interlocal agreement, and it requested imposition of a constructive trust. Those causes of action remain pending in the district court and are not part of the NRCP 54(b)-certified judgment. The district court properly certified its summary judgment declaring A.B. 6, section 18 constitutional, as the summary judgment completely removed the State as a party to the action and the district court determined that there was no just reason for delay. NRCP 54(b); *Aldabe v. Evans*, 83 Nev. 135, 425 P.2d 598 (1967).

[7]In its status as cross-respondent in this appeal, the CWC filed an answering brief, indicating that it did not object to The M Resort's opening brief because its interest is aligned with the cross-appellants' interest on the issue of A.B. 6, section 18's constitutionality. The cities of Reno, Henderson, and North Las Vegas have filed amicus curiae briefs in this matter. NRAP 29(a).

## DISCUSSION

The CWC and The M Resort and other Clark County business cross-appellants (hereinafter The M Resort) challenge A.B. 6, section 18 on two grounds: that it impermissibly converts funds assessed as user fees and exacted on a local basis into a tax for distribution on a statewide basis in violation of Nevada Constitution Article 4, Section 20; and that it is a local or special law that operates over a particular locality, and is directed at funds obtained from wastewater treatment users in Clark County, in violation of Nevada Constitution Article 4, Section 21, which requires laws to be general and to operate uniformly throughout the state.

The State, on the other hand, maintains that the CWC and its members are subject to the overriding sovereign control of legislatively enacted statutes and that A.B. 6, section 18 is within the Legislature's authority to enact. That conclusion, however fails to address the principle that the State's sovereign control over its political subdivisions is not absolute, but rather subject to specific constitutional limitations, including Article 4, Sections 20 and 21, which explicitly limit the Legislature's authority to enact local and special laws. Although the district court extended unqualified deference to the Legislature's law-making authority in upholding section 18, the Legislature's authority to enact a local or special law is constrained by Nevada Constitution Article 4, Sections 20 and 21. A.B. 6, section 18 must, therefore, be analyzed under that constitutional framework.

*The Legislature's authority to enact laws binding upon political subdivisions is subject to constitutional limitations*

Although the Legislature's law-making authority is considerable, it is not unlimited. *Galloway v. Truesdell*, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967). Under constitutional checks and balances principles, courts are obligated to enforce the limitations that the constitution imposes upon legislative acts, and in that regard, the district court erred by essentially concluding that A.B. 6, section 18 is insulated from judicial review based on the Legislature's overriding sovereign authority over political subdivisions. The Nevada Constitution is the "supreme law of the state," which "control[s] over any conflicting statutory provisions." *Goldman v. Bryan*, 106 Nev. 30, 37, 787 P.2d 372, 377 (1990). Thus, although the State argues that the CWC has no authority to disregard A.B. 6, section 18's mandate to transfer the $62 million to the State's general fund, the State admits that political subdivisions are not bound by a statute that "violates a specific constitutional limitation." Article 4 of the Nevada Constitution both confers law-making authority on the Legislature, *see* Nev. Const. art. 4, § 1,

and limits that authority in order to protect Nevada citizens from unequal treatment under the laws. *See* Nev. Const. art. 4, §§ 20, 21.

In determining whether A.B. 6, section 18's mandate requiring the CWC to turn over $62 million to the State for its unrestricted general use is permissible under the Nevada Constitution's local and special law proscriptions, we first analyze whether section 18 is local or special legislation. In so doing, we examine the origin of the Nevada Constitution's proscriptions on local and special laws, as that history provides a framework for our analysis. Since, as explained below, we conclude that A.B. 6, section 18 is both a local and special law, we next analyze whether it violates Nevada Constitution Article 4, Section 20, which prohibits local or special laws that assess and collect taxes for state purposes, and Article 4, Section 21, which otherwise prohibits local or special laws in cases where a general law could apply. As discussed below, we determine that A.B. 6, section 18 violates both Article 4, Sections 20 and 21, and it therefore fails under the Nevada Constitution.

*Nevada constitutional provisions proscribing local and special laws*

The Nevada Constitution provides that ''[t]he legislature shall not pass local or special laws . . . [f]or the assessment and collection of taxes for state, county, and township purposes,'' Nev. Const. art. 4, § 20, and it further requires that ''[i]n all cases enumerated in [Section 20], and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State.'' Nev. Const. art. 4, § 21. This court has explained the prohibition against local and special laws under Article 4, Sections 20 and 21 as follows:

> [I]f a statute be either a special or local law, or both, and comes within any one or more of the cases enumerated in section 20, such statute is unconstitutional; if the statute be special or local, or both, but does not come within any of the cases enumerated in section 20, then its constitutionality depends upon whether a general law can be made applicable.

*Conservation District v. Beemer*, 56 Nev. 104, 116, 45 P.2d 779, 782 (1935).

Because history instructs the analysis that follows, we first explain the origins of the Nevada Constitution's proscriptions on such laws and the constitutional framers' purpose in adopting provisions limiting the Legislature's authority to enact local and special laws before delving into why A.B. 6, section 18 fits within the proscribed local and special laws set forth under Nevada Constitution Article 4, Sections 20 and 21.

*History leading to the adoption of Nevada Constitution Article 4, Sections 20 and 21*

During Nevada's Constitutional Convention in 1864, the delegates, in structuring Article 4, Section 20 for adoption into the Nevada Constitution, used as a guide Indiana's constitutional provisions prohibiting special legislation. *See Debates & Proceedings of the Nevada State Constitutional Convention of 1864*, at 466 (Andrew J. Marsh off. rep. 1866); *Hess v. Pegg*, 7 Nev. 23 (1871) (noting that the language in Nevada's constitutional provisions proscribing local and special legislation was borrowed from the constitution of Indiana); *State of Nevada v. Irwin*, 5 Nev. 111, 120 (1869) (pointing out that Article 4, Section 22 of the Indiana Constitution is "verbatim with that of Nevada" Constitution Article 4, Section 20, except that Indiana makes more exceptions to special legislation). The Nevada constitutional framers' purpose in adopting mandates proscribing local and special legislation was to "remedy an evil into which it was supposed the territorial legislature had fallen in the practice of passing local and special laws for the benefit of individuals instead of enacting laws of a general nature for the benefit of the public welfare." *Evans v. Job*, 8 Nev. 322, 333 (1873). The framers of the Indiana Constitution had similar concerns with local and special legislation, deeming the practice of legislators agreeing to vote for the local bills of other legislators in return for comparable cooperation for passing their own local bills a "growing evil." *See Municipal City of South Bend v. Kimsey*, 781 N.E.2d 683, 686 (Ind. 2003). The problem with such lawmaking is that when "a law affects only one small area of the state, voters in most areas will be ignorant of and indifferent to it." *Id.* Likewise, early in Nevada's jurisprudence, this court explained that the purpose behind requiring statutes to be general in nature is that when a statute affects the entire state, it is more likely to have been adequately considered by all members of the Legislature, whereas a localized statute is not apt to be considered seriously by those who are not affected by it. *Town of Pahrump v. Nye County*, 105 Nev. 227, 773 P.2d 1224 (1989); *see also Colman v. Utah State Land Bd.*, 795 P.2d 622, 636 (Utah 1990) (providing that " '[a] law is general when it applies equally to all persons embraced in a class founded upon some natural, intrinsic, or constitutional distinction. It is special legislation if it confers particular privileges or imposes peculiar disabilities, or burdensome conditions in the exercise of a common right; upon a class of persons arbitrarily selected, from the general body of those who stand in precisely the same relation to the subject of the law' " (quoting *Utah Farm Bur. Ins. Co. v. Utah Ins. Guar. Ass'n*, 564 P.2d 751, 754 (Utah 1977))). At their core, local and special law proscriptions "reflect a concern for equal treatment under the law," Robert F. Williams, *Equality Guarantees in State Constitutional Law*, 63

Tex. L. Rev. 1195, 1209 (1985), and seek to fix inequities in the areas of "economics and social welfare." *See* Donald Marritz, *Making Equality Matter (Again): The Prohibition Against Special Laws in the Pennsylvania Constitution*, 3 Widener J. Pub. L. 161, 184-85 (1993) (explaining the origins of Pennsylvania's constitutional prohibition against special laws).

Although the Nevada Constitution expresses a preference for generally applicable laws, local or special laws are not *ipso facto* unconstitutional. Nev. Const. art. 4, §§ 20, 21; *see W.R. Co. v. City of Reno*, 63 Nev. 330, 352-53, 172 P.2d 158, 169 (1946). A local or special law may be upheld so long as (1) it does not come within any of the cases enumerated in Nevada Constitution Article 4, Section 20; and (2) a general law could not have been made applicable. Nev. Const. art. 4, § 21; *see Anthony v. State of Nevada*, 94 Nev. 337, 580 P.2d 939 (1978); *Cauble v. Beemer*, 64 Nev. 77, 96, 177 P.2d 677, 686 (1947); *Conservation District v. Beemer*, 56 Nev. 104, 45 P.2d 779 (1935). For the reasons explained below, A.B. 6, section 18 fails on both counts.

### A.B. 6, section 18 is a local and special law

The CWC and The M Resort argue that because A.B. 6, section 18 applies in only a single Nevada county, and only to users of the municipal or county sewer systems in that county, it is a local law, and because it applies specifically and directly to a single entity in the state to the exclusion of all others similarly situated, it is a special law. The CWC also points out that the assembly bill's text admits that it is being used in lieu of a general law. The State responds that even though, on its face, A.B. 6, section 18 operates selectively in a few political subdivisions and in only a limited geographical area, it is not a local or special law because it advances supervening statewide budget concerns that transcend purely local interests. The State also urges this court to disregard the legislative admission that section 18 is being used in lieu of a general law.

A law is local if it operates over "a particular locality instead of over the whole territory of the State." *Damus v. County of Clark*, 93 Nev. 512, 516, 569 P.2d 933, 935 (1977) (citing *State of Nevada v. Irwin*, 5 Nev. 111, 121 (1869)). A law is special if it "pertain[s] to a part of a class as opposed to all of a class." *Id.* (citing *Irwin*, 5 Nev. at 121); *see State of Nevada v. Cal. M. Co.*, 15 Nev. 234, 249 (1880) (describing a special law as one that "imposes special burdens, or confers peculiar privileges upon one or more persons in no wise distinguished [way] from others of the same category"). On the other hand, a general law is one that is applied uniformly. Nev. Const. art. 4, § 21; *see Black's Law Dic-*

*tionary* 963 (9th ed. 2009) (defining a general law as one that is "neither local nor confined in application to particular persons").

In drafting A.B. 6, section 18, the Legislature found and declared that "[a] general law cannot be made applicable to the provisions of this section because of special circumstances." A.B. 6, § 18(1)(c), 26th Spec. Sess. (Nev. 2010). The State acknowledges that when legislative findings are expressly included within a statute, those findings should be accorded great weight in interpreting the statute, but it points out that such findings are not binding and this court may, nevertheless, properly conclude that section 18 is a general law despite the Legislature's declaration to the contrary. *McLaughlin v. L.V.H.A.*, 68 Nev. 84, 93, 227 P.2d 206, 210 (1951); *Dunn v. Tax Commission*, 67 Nev. 173, 184, 216 P.2d 985, 991 (1950). The Legislature's express finding and declaration that section 18 is not a general law, however, is consistent with the bill section's text, which, as the district court found, is directed specifically at the CWC and funds collected from wastewater treatment users within specified areas of Clark County. The law applies only to the CWC. The State argues that a law need not be operative in every part of the state to be general, but the determination of whether a law is local or special is based on how it is applied, not on how it actually operates. *See County of Clark v. City of Las Vegas*, 97 Nev. 260, 628 P.2d 1120 (1981) (noting that a statute with a population classification is not necessarily contrary to Article 4, Sections 20 and 21, because if the classification applies prospectively to all counties that could come within its population class, it is neither local nor special).

Although the State asserts that the law is general because it advances supervening statewide concerns that transcend local interests, the case on which the State relies, *State ex rel. List v. County of Douglas*, does not support that proposition. 90 Nev. 272, 278, 524 P.2d 1271, 1275 (1974). Instead, in *List*, this court upheld a statute, enacted pursuant to a compact between Nevada and California that required the Nevada counties bordering Lake Tahoe to pay apportioned shares from their general funds to the Tahoe Regional Planning Agency, holding that the

> preservation of the region of the Lake Tahoe Basin as a natural resource for the enjoyment of all people sets it apart from the embrace of the commands of [Nevada Constitution Article 4, Sections 20 and 21]. Were we to rule otherwise, every interstate compact proposing to protect and preserve a common natural resource through an agency empowered to enact laws would be a nullity. We are wholly unable to attribute such an intention to those who wrote the prohibitions of [Article 4, Sections] 20 and 21.

*List*, 90 Nev. at 279, 524 P.2d at 1275. Thus, the holding is based on the conclusion that the statute's purpose was to conserve a common "natural resource for the enjoyment of all people" that is not confined to a local area. *Id.* In so holding, the court in *List* agreed with the California Supreme Court, which, in addressing a challenge to the same compact under similar California constitutional provisions reasoned that

> "[t]he water that the Agency is to purify cannot be confined within one county or state; . . . . The wildlife which the Agency should protect ranges freely from one local jurisdiction to another. . . . Only an agency transcending local boundaries can devise, adopt and put into operation solutions for the problems besetting the region as a whole. Indeed, the fact that the Compact is the product of the cooperative efforts and mutual agreement of two states is impressive proof that its subject matter and objectives are of regional rather than local concern."

*Id.* (quoting *People ex rel. Younger v. County of El Dorado*, 487 P.2d 1193, 1201 (Cal. 1971)).

*List*, unlike this case, addresses regional concerns and the preservation of a natural resource directly affected by inhabitants of that region. Here, a natural resource common to an interstate region is not at issue; instead, A.B. 6, section 18 is in the reverse and addresses statewide concerns through legislation that applies only to the CWC and funds collected from wastewater-treatment users within a certain locality. Since section 18 on its face advances statewide objectives, but burdens only the CWC by appropriating funds collected from certain residents and businesses within a particular locality for the state's general use, it is special (pertaining to only the CWC) and local (applying to only a particular locality). *Damus*, 93 Nev. at 516, 569 P.2d at 935; *Cal. M. Co.*, 15 Nev. at 249.

*By requiring the CWC to turn over fees it assessed against its members for capital improvement projects and services for the benefit of Las Vegas Valley sewer service users, A.B. 6, section 18 imposes an unconstitutional local and special tax against the CWC in violation of Nevada Constitution Article 4, Section 20*

The Legislature is not permitted to pass local or special laws "[f]or the assessment and collection of taxes for state, county, and township purposes." Nev. Const. art. 4, § 20. An exaction of money for the purpose of generating revenue is a tax. *Douglas Co. Contractors v. Douglas Co.*, 112 Nev. 1452, 1457, 929 P.2d 253, 256 (1996); *State v. Boyd*, 27 Nev. 249, 256, 74 P. 654, 655

(1903); *see also Hawaii Insurers Council v. Lingle*, 201 P.3d 564 (Haw. 2008); 71 Am. Jur. 2d *State and Local Taxation* § 13 (2001) (explaining that a charge is a tax if its purpose is to raise revenue). While a tax is compulsory and it entitles the taxpayer to receive nothing except the governmental rights enjoyed by all citizens, a user fee is optional and applies to a specific charge for the use of publicly provided services. *See U.S. v. City of Huntington, W.Va.*, 999 F.2d 71, 74 (4th Cir. 1993) (explaining that ''[u]ser fees are payments given in return for a government-provided benefit''; while taxes are '' 'enforced contribution[s] for the support of government' '' (alteration in original) (quoting *United States v. La Franca*, 282 U.S. 568, 572 (1931))); *City of Gary, Ind. v. Indiana Bell Tel.*, 732 N.E.2d 149, 156 (Ind. 2000).

Other courts, in addressing the issue of whether an exaction amounts to a tax, have explained that ''the nature of the tax or charge that a law imposes is not determined by the label given to it but by its operating incidence.'' *State v. Medeiros*, 973 P.2d 736, 741 (Haw. 1999) (internal quotation omitted) (citing *City of Huntington v. Bacon*, 473 S.E.2d 743, 752 (W. Va. 1996) ('' 'It is a well-nigh universal principle that courts will determine and classify taxation on the basis of realities, rather than what the tax is called in the taxing statute or ordinance.' '' (quoting *Hukle v. City of Huntington*, 58 S.E.2d 780, 783 (W. Va. 1950))); *Emerson College v. City of Boston*, 462 N.E.2d 1098, 1105 (Mass. 1984) (explaining that ultimately, ''the nature of a monetary exaction must be determined by its operation rather than its specially descriptive phrase'' (internal quotation omitted))). Thus, to distinguish between a ''fee'' and a ''tax,'' the Hawaii Supreme Court in *Medeiros* adopted a modified version of the test articulated by the Massachusetts Supreme Judicial Court in *Emerson College*, which analyzes whether the charge ''(1) applies to the direct beneficiary of a particular service, (2) is allocated directly to defraying the costs of providing the service, and (3) is reasonably proportionate to the benefit received.'' *Medeiros*, 973 P.2d at 742. If those criteria fit the charge, it is a fee. *Id.* at 742-45.

Here, the amounts collected by the CWC members through assessments were directed at capital improvement projects (mainly the SCOP) and sewer services. As the district court concluded in its summary judgment, such fees are user fees.[8] Applying the

---

[8]In support of its argument, the State points out that municipal public utility rates are '' 'ordinarily not characterized as taxes, . . . . even if some of the proceeds are used as general revenue.' '' *See* 12 Eugene McQuillin, *The Law of Municipal Corporations* § 35:69 (3d ed. 2006). The CWC, however, was created by interlocal agreement among four political subdivisions of the State for the primary purpose of constructing the SCOP, managing effluent flowing through CWC facilities, and preparing and implementing regional water qual-

*Medeiros* test, the fees were to be applied for the benefit of members who provided sewer services, they were allocated to defray capital improvement project and sewer service costs, and they were proportionate to the benefits included in the CWC's capital improvement plan (in particular, the SCOP, which the district court estimated would cost $850 million to construct) that was in effect when A.B. 6 was enacted and when the district court rendered its decision. *Id.* at 742.

This court has not addressed whether user fees collected for capital improvement projects and sewer services are transformed into a tax through a subsequent law directing their transfer into the State's general fund, but it has addressed the issue of whether an ordinance exacting a fee from subdivision contractors for purposes of supporting county school capital improvements was properly characterized as a regulatory measure or a tax. *Douglas Co. Contractors v. Douglas Co.*, 112 Nev. 1452, 1459, 929 P.2d 253, 257 (1996). In that case, looking at the ordinance's "true purpose" to determine whether it was regulatory or revenue-raising, the court reasoned that the ordinance that implemented the "fair share cost" (FSC) program was being utilized to benefit the entire county rather than the new subdivision against which the fee was assessed. *Id.* It then concluded that "any regulatory features of the FSC are incidental to its true purpose—to raise revenue to finance construction benefitting the County at large and not simply the subdivision at issue." *Id.* Since the FSC was "clothed with the indicia of a tax rather than a regulatory measure," this court held that the FSC program was an impermissible tax.[9] *Id.* at 1459, 929 P.2d at 257-58. In so doing, this court explained that " 'when it appears from the Act itself that revenue is its main objective, and the amount of the tax supports that theory, the enactment is a revenue measure.' " *Id.* at 1457, 229 P.2d at 256 (quoting *Eastern Diversified v. Montgomery County*, 570 A.2d 850, 854 (Md. 1990)).

Applying that reasoning to this case, the purpose of A.B. 6, section 18 is to help correct the state's revenue shortfall. Revenue-

_____

ity plans for its members and, ultimately, residents and businesses in the Las Vegas Valley. As the district court found, the fees that the CWC collected from its members were user fees for the purpose of carrying out the CWC's conferred functions, including the SCOP, and implementing regional water quality plans for treatment and discharge of effluent from members' treatment plants.

[9]Because this court determined that the FSC was invalid under statutes enabling and constraining impact fees and governing police power, it concluded that it was unnecessary to address appellants' contention that the FSC was also an unconstitutional tax. *Douglas Co. Contractors*, 112 Nev. at 1466, 929 P.2d at 261-62.

raising acts are defined as taxes. *Id.* Although the State distinguishes *Douglas County Contractors* on the basis that the ordinance in that case involved the "collection of regulatory fees," and argues that this case involves "reasonable utility fees," the holding in *Douglas County Contractors* rests on the exaction's true purpose. A.B. 6, section 18 takes the revenue obtained from user fees collected by the CWC members from business and residents within their respective jurisdictions with the intention of applying those fees to unrestricted statewide general fund uses. Such a broad-range-intended use "is of weight in indicating that the charge is a tax." *Emerson College*, 462 N.E.2d at 1106 (internal quotation omitted). "[S]tatutory earmarking of proceeds for [purposes other than what they were assessed] is more consistent with a revenue raising purpose than with an intent to recover . . . expenditures" related to the CWC's conferred functions. *Id.* Applying that reasoning here, A.B. 6, section 18's mandate directing the CWC to transfer money to the State's general fund for statewide-unrestricted-general use is an impermissible local and special tax. *Id.*; *see La Franca*, 282 U.S. at 572 (defining taxes as the "enforced contribution to provide for the support of government").

The State, in arguing that A.B. 6, section 18 is not an impermissible tax under Nevada Constitution Article 4, Section 20, relies in part on *Barber v. Ritter*, in which the Colorado Supreme Court upheld statutes requiring money to be transferred from state special cash funds that were financed by user fees, surcharges, and special assessments into the state's general fund. 196 P.3d 238 (Colo. 2008). We are not persuaded, however, that the reasoning in *Barber* applies to this case for two reasons. First, the challenge against the statute requiring the money transfer in this matter is based on the Nevada Constitution's prohibition against local and special laws under Article 4, Sections 20 and 21, and the plaintiffs/appellants in *Barber* challenged the statutes at issue in that case under the Colorado Taxpayer's Bill of Rights (TABOR), an amendment to the Colorado Constitution passed in 1992 by citizen initiative that was aimed at limiting government spending without taxpayer approval. *See* Colo. Const. art. X, § 20 (1992); *Barber*, 196 P.3d 238. Thus, the court in *Barber* did not analyze the statutes' constitutionality under any local and special law prohibitions. Second, unlike this case, the court in *Barber* held that it was permissible under TABOR to require the money retained in state special funds to be transferred to the state's general fund, reasoning that the transfers did not amount to a tax subject to TABOR's voter approval requirement because the transfer of fees from state cash funds to the state's general fund did not alter their essential character as fees. *Id.* at 242, 249. *Barber*, therefore, does not provide any authority for the proposition that funds held by a specific political subdivision within a specific locality may be

transferred to the state's general fund for the benefit of the entire state and still comport with Nevada's constitutional proscriptions on local and special laws.

Our conclusion that A.B. 6, section 18 constitutes an impermissible tax is consistent with the reasoning from other jurisdictions that have addressed similar situations. For example, in *Hawaii Insurers Council v. Lingle*, the Hawaii Supreme Court determined that a statute requiring the Hawaii Insurance Council to transfer funds collected as regulatory fees to the state's general fund was an unlawful attempt to transform $3.5 million of legitimate assessments into a general tax. 201 P.3d 564, 583 (Haw. 2008). In that case, the court rejected the state's "contention that a user or regulatory fee, if initially assessed as such, can be transferred to a general fund when the same assessment would have been invalid had it been assessed initially with the express understanding that the funds would be transferred to the general fund." *Id.* at 582.

Here, while the fees were collected as user fees, when the Legislature later enacted A.B. 6, section 18, requiring that the collected fees be transferred to the State's general fund for unrestricted general use, they were transformed into a local and special tax, which is prohibited under Article 4, Section 20 of the Nevada Constitution. Although the State attempts to distinguish *Lingle* on the basis that the transfer of "regulatory fees" is not at issue here, the point in *Lingle* that is relevant in this matter is that fees assessed as legitimate fees can be transformed into impermissible taxes if they are later transferred to the State's general fund. 201 P.3d at 582. This is true because they would no longer bear any relationship to the purpose for which they were assessed once mixed into the general fund. *See id.* (emphasizing the revenue's ultimate use in determining whether a fee amounts to a tax by asking whether it provides a general benefit to the public, of a sort often financed by a general tax); *see also Health Services Medical Corp. v. Chassin*, 668 N.Y.S.2d 1006, 1009-10 (Sup. Ct. 1998) (declaring a statute to be an unconstitutional tax because it directed a portion of payments made by health maintenance organizations to hospitals for inpatient care to be deposited in the state's general fund).

Accordingly, looking at A.B. 6, section 18's true purpose, which is to raise the State's revenue base through an assessment against one political subdivision of the state that operates in only a specific locality in the state, we conclude that section 18 is an impermissible local and special tax under Article 4, Section 20 of the Nevada Constitution. *See Douglas Co. Contractors v. Douglas Co.*, 112 Nev. 1452, 1457, 1459, 929 P.2d 253, 256, 257 (1996); *State v. Boyd*, 27 Nev. 249, 74 P. 654 (1903).

*A.B. 6, section 18 is contrary to Article 4, Section 21 because a general law could apply to address the State's budget shortfall*

Even if this court were to credit the State's argument that A.B. 6, section 18 involves only fees, not a tax, taking it outside Article 4, Section 20, the measure still fails because it violates Article 4, Section 21, which mandates general laws in all cases where they "can be made applicable." While A.B. 6, section 18 declares that a general law could not apply "because of special circumstances," and the Legislature's decision on whether a general law can be made applicable in a given case is presumed correct, *Hess v. Pegg*, 7 Nev. 23 (1871), a law's compliance with Article 4, Section 21 nevertheless is subject to judicial review. *City of Reno v. County of Washoe*, 94 Nev. 327, 332-33, 580 P.2d 460, 463-64 (1978); *State of Nevada v. Irwin*, 5 Nev. 111, 120 (1869) (noting "that the power of determining whether a given law is repugnant to the principles of a constitution with which it is alleged to conflict, belongs to the judiciary," and the court in that regard is conclusive); *Heckler v. Conter*, 187 N.E. 878, 879 (Ind. 1933) (rejecting earlier authority that allowed the legislature complete discretion in determining whether a general law could have applied, reasoning that "if the Legislature may arbitrarily decide that a general law cannot be made applicable, and its decision is final and cannot be questioned, it is not restrained or restricted in any sense, and the constitutional provision [proscribing local or special laws in cases where a general law could have applied] is, if not a nullity, at least a mere admonition").

When determining whether a local or special law is permissible because a general law could not be made "applicable" for purposes of Nevada Constitution Article 4, Section 21, we look to whether the challenged law "best subserve[s] the interests of the people of the state, or such class or portion as the particular legislation is intended to affect." *Irwin*, 5 Nev. at 122. In upholding local or special legislation in the past, this court has focused on whether "the general legislation existing was insufficient to meet the peculiar needs of a particular situation," or whether a particular emergency situation existed, requiring more speedy action and relief than could be had by proceeding under the existing general law. *Cauble v. Beemer*, 64 Nev. 77, 96, 177 P.2d 677, 686 (1947). With those precepts in mind, local or special laws have been upheld in situations where an emergency situation existed within a certain county or locality and a general law could not apply to address the situation because only that county or locality was affected. *Id.* at 95-96, 177 P.2d at 685-86 (upholding local law that authorized Washoe County to issue bonds to fund rebuilding a

Washoe general hospital and to levy taxes to pay for the bonds, based on the unsanitary and inadequate conditions of the existing hospital); *see also Quilici v. Strosnider*, 34 Nev. 9, 115 P. 177 (1911) (upholding local law that removed the Lyon County seat from Dayton to Yerington after the Lyon County courthouse burned down); *Conservation District v. Beemer*, 56 Nev. 104, 45 P.2d 779 (1935) (upholding law that authorized Washoe County to issue bonds to help fund the construction of reservoirs to store and regulate Truckee River floodwaters). In all of those cases, the challenged local or special laws addressed immediate concerns within a locality and directly burdened and benefited those who were subject to the laws. This court has also upheld local or special laws on the basis that the general legislation existing was insufficient to meet the peculiar needs of a particular local or special situation and a general law could not be made applicable. *See State ex rel. List v. County of Douglas*, 90 Nev. 272, 278, 524 P.2d 1271, 1275 (1974) (upholding legislation that created the Tahoe Regional Planning Agency and allowed it to regulate activity in order to preserve a common natural resource); *Dotta v. Hesson*, 38 Nev. 1, 143 P. 305 (1914) (upholding law that permitted the issuance of county bonds to construct a high school in a rural location of the county); *State v. Lytton*, 31 Nev. 67, 99 P. 855 (1909) (upholding law that permitted the issuance of county bonds to construct a county jail and courthouse); *Hess v. Pegg*, 7 Nev. 23 (1871) (upholding law that designated Reno as Washoe County's seat); *State of Nevada v. Irwin*, 5 Nev. 111 (1869) (upholding legislation that appointed a person to serve as county sheriff from the time when the county was created until the county's first election); *see also Goodwin v. City of Sparks*, 93 Nev. 400, 566 P.2d 415 (1977) (concluding that a revitalization and redevelopment law that applied to only two cities was invalid under Article 4, Section 21 because a general law could have been made applicable to all cities, as deterioration of downtown areas and need for improvement was not unique to Reno and Sparks).

Although we agree with the State that the statewide budget crisis presents exigent circumstances that must be addressed, those circumstances are of statewide concern and cannot be addressed through legislation that does not comport with Article 4, Section 21's local and special law proscription. Political differences that might make it difficult to agree on a generally applicable law to address the State's budget crisis do not create "special circumstances" that would permit a local or special law to address a concern that affects the entire state. The State's position in this appeal fails to recognize that the common thread in this court's jurispru-

dence from the beginning of Nevada's statehood is that permissible local or special laws address particular concerns that pertain only to the locality or to the part of the class affected by the laws, and not to statewide concerns. No Nevada case has upheld a challenged local or special law that addressed a statewide concern, and the State points to no other jurisdiction that has permitted such a law. Indeed, just shortly after the Nevada Constitution was forged, this court explained that in determining the validity of any local or special law, "a general law should always be construed . . . to be applicable in all cases where the subject is one in which from its very nature the entire people of the State have an interest." *Evans v. Job*, 8 Nev. 322, 336 (1873). The Indiana Supreme Court's analysis of statutes under its constitutional proscriptions against local and special laws has been parallel to Nevada's in determining whether a general law could have applied. It has pointed out that when examining local or special legislation, the court looks at whether the "legislation is reasonably related to 'inherent characteristics' of the affected locale," and whether it applies "wherever the justifying characteristics are found." *Municipal City of South Bend v. Kimsey*, 781 N.E.2d 683, 692 (Ind. 2003). Stating the converse, the Indiana Supreme Court explained that "if the conditions the law addresses are found in at least a variety of places throughout the state, a general law can be made applicable and is required by Article IV, and special legislation is not permitted." *Id.* at 692-93.

A.B. 6, section 18 requires one political subdivision to turn over money collected in a local area to the State's general fund coffers for statewide benefit. It affects the people of the entire state of Nevada, and the State's budget crisis is, by its very nature, a subject of interest to all people of the state. For that reason, it cannot be addressed by a local or special law that applies to burden only one entity of the state that operates in one locality of the state. The State offers special circumstances but does not indicate why a general law, uniformly applied to all political subdivisions or based on some other qualifying criteria was not used to address the budget shortfall. From early in this court's jurisprudence, such laws have been rejected. In 1903, this court held unconstitutional a statute that, among other things, required money collected from Reno city licenses to be allocated in portions to the state, Washoe County, and the city. *State v. Boyd*, 27 Nev. 249, 74 P. 654 (1903). In concluding that the statute was invalid, the court stated:

> The purpose of an exaction from the public in the form of a tax or license, either for revenue or in the exercise of the police power, is for the benefit of the locality from which the

money is collected. Any exaction laid upon a district or community in which it has no interest, or imposed for the benefit of others, to which it is not justly bound to contribute, is invalid.

*Id.* at 255, 74 P. at 654. The court explained that it is "not only just, but it is essential" that a "state purpose must be accomplished by state taxation." *Id.* at 256, 74 P. at 654. It further explained that the city cannot be compelled to pay in order to relieve others in the county and the state of a "public burden properly resting upon them." *Id.* In holding unconstitutional the statute's requirement that the city turn over portions of city licensing fees to the county and state, the court explained that it was beyond the Legislature's taxing power to " 'compel one town, city, or locality to contribute to the payment of the debts of another.' " *Id.* at 257, 74 P. at 655 (quoting *Matter of Lands in the Town of Flatbush*, 60 N.Y. 398 (1875)).

The State argues that *Boyd* is inapposite because it involved a "tax statute" and the application of a well-established rule limiting the use of "money derived through local taxation," and it argues that money obtained through local government utilities is not subject to such limitations. *Boyd*, without limiting its decision to taxes, states that "[a]ny exaction laid upon a district or community . . . imposed for the benefit of others, to which it is not justly bound to contribute, is invalid." 27 Nev. at 255, 74 P. at 654; *see Goodwin v. City of Sparks*, 93 Nev. 400, 566 P.2d 415 (1977) (rejecting local law where a general law could have been made applicable); *County of Clark v. City of Las Vegas*, 92 Nev. 323, 550 P.2d 779 (1976) (rejecting a local and special law that applied only to certain areas in and around Las Vegas, concluding that a general law could be made applicable throughout the state). Other courts with local and special law proscriptions have likewise rejected laws that burden only one class or locality because a general law could address the situation. *See, e.g., Municipal City of South Bend v. Kimsey*, 781 N.E.2d 683 (Ind. 2003) (determining that an annexation statute that applied to only one county based on the statute's population criteria was invalid, despite the legislature's declaration that an emergency existed, because no facts existed to explain why the special legislation should apply only to one county); *Carson v. City of Kansas City, Kansas*, 177 P.2d 212 (Kan. 1947) (invalidating special street paving law that applied to only one city); *Lee v. Com.*, 565 S.W.2d 634 (Ky. Ct. App. 1978) (invalidating special law prohibiting donations to the election campaigns of candidates for a Property Valuation Administrator office from persons whose property he or she may assess).

Accordingly, since A.B. 6, section 18 is a local and special law that addresses a statewide concern to which a general law could have applied, it is not permissible under Article 4, Section 21.[10] We thus conclude that the district court erred by declaring it constitutional.

## CONCLUSION

A.B. 6, section 18's purpose is to help correct the State's revenue shortfall through an assessment against one political subdivision of the state that operates in only a specific locality in the state. Because it burdens only the CWC in its efforts to raise revenue for the state, it is an impermissible local and special tax under Article 4, Section 20 of the Nevada Constitution. The Nevada Constitution also prohibits local and special laws where a general law could apply and because A.B. 6, section 18 addresses the State's budget shortfall, which, by its very nature is an issue of concern for all the people of the state, to which a general law could have applied, it also fails under Article 4, Section 21. Therefore, since A.B. 6, section 18 conflicts with Nevada Constitution Article 4, Sections 20 and 21, we reverse the district court's judgment.

DOUGLAS, C.J., and CHERRY, SAITTA, GIBBONS, PICKERING, and PARRAGUIRRE, JJ., concur.

[10]Because it is not necessary to our disposition here, we do not reach The M Resort's claims that A.B. 6, section 18 is unconstitutional because it mandates a taking, violates equal protection rights by imposing a de facto tax upon The M Resort, and impairs contractual obligations.