HONORABLE ROBERT L. REID, Justice of the Peace, Las Vegas Township, Nevada, Appellant, v. ROY WOOFTER, District Attorney of Clark County, Nevada, Respondent.

No. 6647

June 21, 1972                                    498 P.2d 361

*Goodman and Snyder,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, *Roy A. Woofter,* District Attorney, and *Raymond Jeffers* and *Charles L. Garner,* Deputy District Attorneys, Clark County, for Respondent.

# OPINION

By the Court, Batjer, J.:

Appellant, Justice of the Peace of the Las Vegas Township, is appealing from a judgment of the district court declaring NRS 122.080 constitutional, thereby prohibiting him from performing marriage ceremonies in the Las Vegas Township.

NRS 122.080[1] was amended in 1969 to provide that: "Any justice of the peace in the state who solemnizes marriages or performs marriage ceremonies in a commissioner township is guilty of a misdemeanor." NRS 122.080(3). It is provided that instead of a justice of the peace, a commissioner or deputy commissioner of civil marriages will solemnize marriages in commissioner townships. NRS 122.080(1); NRS 122.173. A "commissioner township," as defined by NRS 122.171(1) is "a township in which, at the close of registration for the last preceding general election, there were 8,000 or more registered voters, and which is in a county that had, at the close of registration for such election, 50,000 or more registered voters."[2] At the close of the registration for the November, 1970 general election, there were more than 8,000 registered voters in the Las Vegas Township, and more than 50,000 registered voters in Clark County. Appellant contends that NRS 122.080 is violative of: (1) Nev. Const., art. 4, § 20 prohibiting certain local and special laws and art. 4, § 21 providing for uniform operation of general laws; (2) art. 4, § 25 providing for a uniform county and township government; and (3) art. 6, § 8 dealing with jurisdiction of justice courts and art. 6, § 10 regarding fees or perquisites of judicial officers. Finding no

---

[1]Ch. 440, § 5, Stats. of Nev. 764.

[2]On and after January 1, 1973, the critical figures will be 6,000 for the township and 50,000 for the county. NRS 122.171(2).

380

constitutional infirmity in NRS 122.080, we affirm the judgment of the district court.

1. Appellant contends that Nev. Const., art. 4, § 20,[3] forbidding the enactment of local or special laws regulating the jurisdiction and duties of justices of the peace, and art. 4, § 21,[4] requiring that general laws have uniform operation throughout the state, render NRS 122.080 unconstitutional. Appellant argues that since NRS 122.080 presently applies, due to population, to only certain townships within Clark and Washoe counties, it is a prohibited local or special law. This argument is without merit, as we have held that a statute is not rendered an unconstitutional local or special law merely because it applies to only one or a few areas due to their population, for if there were others of the same population they too would be included. Fairbanks v. Pavlikowski, 83 Nev. 80, 423 P.2d 401 (1967); Viale v. Foley, 76 Nev. 149, 350 P.2d 721 (1960); State v. Woodbury, 17 Nev. 337 (1883); cf. State v. Boyd, 19 Nev. 43 (1885). The mere fact that at the present time only two counties fall within the statute is immaterial, as the validity of NRS 122.080 is determined by ascertaining its effect, and not by the number of counties coming within its scope. Since NRS 122.080 in its operation and effect is so framed as to apply in the future to all counties coming within its designated class, it is neither local nor special within the provisions of Nev. Const., art. 4, §§ 20 or 21. Fairbanks v. Pavlikowski, supra; State v. Donovan, 20 Nev. 75, 15 P. 783 (1887).

2. Next, appellant asserts that NRS 122.080 is rendered unconstitutional by Nev. Const., art. 4, § 25[5] which requires that the legislature establish a uniform system of county and township government. One purpose of this constitutional provision, and of the others discussed above, is to prevent crude

[3]Nev. Const., art. 4, § 20: "The legislature shall not pass local or special laws in any of the following enumerated cases—that is to say: . . . Regulating the jurisdiction and duties of justices of the peace and of constables, and fixing their compensation; . . . Regulating the practices of courts of justice; . . . Regulating county and township business; . . . ."

[4]Nev. Const., art. 4, § 21: "In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State."

[5]Nev. Const., art. 4, § 25: "The Legislature shall establish a system of County and Township Government which shall be uniform throughout the State."

and vicious local and special legislation which would not be permitted were it to affect the whole state. Singleton v. Eureka County, 22 Nev. 91, 35 P. 833 (1894) (concurring opinion). To be unobjectionable under these constitutional provisions requiring uniform legislation, an act applying to only one or several counties presently, due to population, must be based upon actual differences evincing a peculiar relation to the legislative purpose. Singleton v. Eureka County, supra; State v. Donovan, supra. It does not appear that the legislature created any absurd or unreasonable distinctions, either in the subject of the act or in the classification of voters, as justices of the peace in the populous counties must devote full time to judicial functions, or an unacceptable backlog will result. In the less populous counties, justices of the peace usually have more time to devote to the performance of marriages, and their judicial function is not impaired thereby. Although the record contains no empirical evidence regarding the exact time requirements of a justice of the peace in a populous county for performance of marriages, nor the precise effect on the judicial operation of the court, it is presumed that the legislature fully investigated facts upon which the legislation was based. Hendel v. Weaver, 77 Nev. 16, 359 P.2d 87 (1961). Inasmuch as the distinctions made in NRS 122.080 were reasonable, and the classification and object to be accomplished were real and substantial in character, the act does not violate Nev. Const., art. 4, § 25.

3.   Finally, appellant argues that NRS 122.080 is rendered unconstitutional by Nev. Const., art. 6, § 10,[6] which impliedly allows a justice of the peace to receive income incidental to his office. This section merely contains a general prohibition against judicial officers receiving any fees from office for their personal use, with an exception for justices of the peace and city recorders. There is no implied prohibition in this section against legislative abrogation of this privilege to receive perquisites of office, nor does that section provide for and guarantee any perquisites to a justice of the peace. Not only are these perquisites of office not guaranteed to appellant, but Nev. Const., art. 6, § 8[7] allows the legislature to fix by law the

---

[6]Nev. Const., art. 6, § 10: "No Judicial Officer, except Justices of the Peace and City Recorders shall receive to his own use any fees or perquisites of Office."

[7]Nev. Const., art. 6, § 8: "The Legislature shall determine the number of Justices of the Peace to be elected in each city and township of the State, and shall fix by law their powers, duties and responsibilities, . . . ."

duties, powers and responsibilities of a justice of the peace. When the legislature enacted NRS 122.080 it merely used this power to alter appellant's duties, and as an incidental effect he lost the opportunity to perform marriages and profit personally.

Affirmed.

ZENOFF, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.