CATHERINE CORTEZ MASTO, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF NEVADA, APPELLANT, v. GYPSUM RESOURCES, LLC, A NEVADA LIMITED LIABILITY COMPANY, RESPONDENT.

No. 59557

January 31, 2013                                                  294 P.3d 404

*Catherine Cortez Masto*, Attorney General, and *Bryan L. Stockton*, Senior Deputy Attorney General, Carson City, for Appellant.

*Manatt, Phelps & Phillips, LLP*, and *Edward Gary Burg* and *George M. Soneff*, Los Angeles, California, for Respondent.

*Legislative Counsel Bureau Legal Division*, and *Brenda J. Erdoes*, Legislative Counsel, and *Kevin C. Powers*, Chief Litigation Counsel, Carson City, for Amicus Curiae Legislature of the State of Nevada.

Before the Court EN BANC.[1]

## OPINION

By the Court, PARRAGUIRRE, J.:

The United States Court of Appeals for the Ninth Circuit has certified four questions to this court regarding the constitutionality of Nevada Senate Bill No. 358, S.B. 358, 72d Leg. (Nev. 2003), in which the Nevada Legislature adopted amendments to Nevada law that prohibit Clark County from rezoning land in certain areas adjacent to Red Rock Canyon National Conservation Area, including 2,500 acres owned by respondent Gypsum Resources, LLC. Those questions are: (1) Does S.B. 358 violate Article 4, Section 20 of the Nevada Constitution because it is a "local or special law" that "regulat[es] county . . . business"?; (2) Does S.B. 358 violate Article 4, Section 21 of the Nevada Constitution because a general law could have been made "applicable"?; (3) Does S.B. 358 violate Article 4, Section 25 of the Nevada Constitution by establishing a "system of County . . . Government" that is not "uniform throughout the State"?; and (4) If S.B. 358 would otherwise violate Article 4, Sections 20, 21, or 25 of the Nevada Constitution, does it fall within an applicable exception and so remain valid?

---

[1]THE HONORABLE CHIEF JUSTICE PICKERING voluntarily recused herself from participation in the decision of this matter.

We answer the first three questions in the affirmative and the last question in the negative.

## FACTS

In 1990, the United States Congress allotted nearly 200,000 acres in southern Nevada to the establishment of the Red Rock National Conservation Area (Red Rock) to preserve "the area in southern Nevada containing and surrounding the Red Rock Canyon." 16 U.S.C. § 460ccc-1(a)(1), (2) (2006). In establishing Red Rock, Congress expressed its opinion that these 200,000 acres would adequately preserve the areas worthy of preservation: "The Congress does not intend for the establishment of the conservation area to lead to the creation of protective perimeters or buffer zones around the conservation area." *Id.* § 460ccc-9.

By 2003, Las Vegas had become the fastest growing metropolitan area in the country, and the prospect of urban sprawl reaching the areas surrounding Red Rock became a distinct possibility. Capitalizing on this possibility, Gypsum purchased 2,500 acres of land adjacent to Red Rock in March 2003. Although the land was zoned as a rural area, Gypsum hoped to obtain a zoning variance from the Clark County Board of Commissioners in order to undertake a large-scale residential development project.

Also in March 2003, the Nevada Legislature was in session. Dina Titus, a Senator at the time, explained to fellow legislators that she had been working hand-in-hand with the Clark County Board of Commissioners to curtail development near Red Rock. *See* Hearing on S.B. 358 Before the Senate Government Affairs Comm., 72d Leg. (Nev., March 26, 2003). To this end, Senator Titus explained that she and the county commissioners had formulated a plan to protect the area adjacent to Red Rock's eastern border and west of the Las Vegas outskirts (Adjacent Lands). *Id.*

Senator Titus explained that the first step in implementing her plan entailed the county commissioners creating a new zoning district consisting of the Adjacent Lands. *Id.* Once created, the commissioners would refuse to accept zoning-variance requests within this new district.

The second part of the plan involved Senator Titus introducing S.B. 358. She explained that, if enacted, the bill would remove Clark County's zoning powers over the Adjacent Lands. *See id.* In other words, S.B. 358 would prevent the county commissioners from later changing their minds about refusing to accept zoning-variance requests. Senator Titus explained her reasons for seeking legislative involvement:

> Why does the State need to get involved at all? The answer is simple; as you know, one Legislature cannot bind another Legislature, one commission could not bind another commis-

sion. Well, this current commission feels very strongly about protecting Red Rock Canyon, but this does not mean in the future some aggressive developer couldn't go to the commission and attempt to get a zoning change, so they could do more dense development. It is much harder to get a State law changed than it is to get a zoning variance, and this is not an issue just of zoning, it is an issue of protecting a state and national treasure.

*Id.*

Senator Titus garnered the support necessary to pass S.B. 358, which was titled the Red Rock Canyon Conservation Area and Adjacent Lands Act (Adjacent Lands Act). *See* 2003 Nev. Stat., ch. 105, §§ 1-10, at 595-98.

In pertinent part, S.B. 358 provides as follows:

With respect to adjacent lands, a local government:

1. Shall not, in regulating the use of those lands:

(a) Increase the number of residential dwelling units allowed by zoning regulations in existence on the effective date of this act . . . ;

(b) Establish any new nonresidential zoning districts, other than for public facilities; or

(c) Expand the size of any nonresidential zoning district in existence on the effective date of this act, other than for public facilities.

*Id.* § 8, at 597.

S.B. 358 also defines "[a]djacent lands" on a parcel-by-parcel basis in a manner that (1) encompasses Gypsum's land, and (2) makes Clark County the only possible "local government" to which S.B. 358 pertains. *Id.* § 7, at 597. Thus, S.B. 358's practical effect is to remove Clark County's zoning powers over Gypsum's land.

Shortly after the passage of S.B. 358, the Clark County Board of Commissioners adopted an ordinance that established a new zoning district containing the Adjacent Lands and decreed that the commissioners would refuse to entertain requests for zoning variances within this district.

Gypsum filed suit against appellant Attorney General in federal district court, asking the court to enjoin the State of Nevada from enforcing S.B. 358. As a basis for injunctive relief, Gypsum claimed that S.B. 358 violated portions of the Nevada and U.S. Constitutions.

Ruling on various motions, the federal district court granted summary judgment in favor of Gypsum on its Nevada constitutional claims and denied the Attorney General's summary judgment motion on Gypsum's federal equal protection claim. Gypsum then

voluntarily dismissed its equal protection claim, leaving only the Nevada constitutional claims. The Attorney General then appealed the district court's summary judgment order to the Ninth Circuit.

Believing there to be no clearly controlling precedent on the state constitutional issues, the Ninth Circuit certified the questions currently before this court.

## DISCUSSION

Gypsum argues that S.B. 358 is a local or special law that regulates county business and establishes a system of county government that is not uniform throughout the State, in violation of Sections 20, 21, and 25 of Article 4 of the Nevada Constitution. Gypsum further argues that S.B. 358 does not fall within any exception to the above constitutional provisions. We agree.

### S.B. 358 violates Article 4, Section 20 because it is a local law that regulates county business

The first certified question concerns Article 4, Section 20 of the Nevada Constitution, which, in pertinent part, prohibits the Legislature from passing local or special laws that regulate county business. Nev. Const. art. 4, § 20. In answering the Ninth Circuit's first question, we must examine whether S.B. 358 is local or special in nature and whether it regulates county business.

We most recently examined the meaning of "local" and "special" legislation within the context of Article 4, Section 20 in *Clean Water Coalition v. The M Resort*, 127 Nev. 301, 255 P.3d 247 (2011). There, the Legislature passed a law requiring the Clean Water Coalition (CWC) to relinquish $62 million of its own money to the State of Nevada so that the State could balance its budget. *Id.* at 307, 255 P.3d at 252. Upon considering the CWC's challenge to this law, we concluded that the law was both "local" and "special" in nature. *Id.* at 312, 255 P.3d at 256. The analysis in *Clean Water* provides an appropriate framework for considering whether the Adjacent Lands Act is a "local" or "special" law.

#### S.B. 358 is a local law

"A law is local if it operates over 'a particular locality instead of over the whole territory of the State.'" *Id.* at 312, 255 P.3d at 255 (quoting *Damus v. County of Clark*, 93 Nev. 512, 516, 569 P.2d 933, 935 (1977)).

In *Clean Water*, the State defended the budget law, maintaining that it was not local because "it advance[d] supervening statewide

concerns that transcend[ed] local interests.'' *Id.* at 313, 255 P.3d at 255. We recognized that the law benefited the entire State, but nevertheless concluded that the law was local because it ''burden[ed] only the CWC by appropriating funds collected from certain residents and businesses within a particular locality.'' *Id.* at 314, 255 P.3d at 256. In other words, regardless of who benefited from the law, it ''operate[d] over'' only one particular locality. *Id.* at 312, 255 P.3d at 255.

A similar analysis applies here. Any statewide benefit that might arise from preserving the Adjacent Lands does not change the fact that S.B. 358 operates over only one particular portion of Nevada, specifically small portions of Clark County. This is analogous to the legislation addressed in *Clean Water*, which also operated over only one particular portion of Clark County. Thus, applying the same rationale we used in *Clean Water*, S.B. 358 is a local law for the purposes of Section 20.[2]

### *''Regulating county business''*

Having concluded that S.B. 358 is a local law, we address whether S.B. 358 ''[r]egulat[es] county . . . business.'' Nev. Const. art. 4, § 20.

We have broadly defined county business as '' 'covering almost everything that concerns the administration of the county government,' '' *McDonald v. Beemer*, 67 Nev. 419, 425, 220 P.2d 217, 220 (1950) (quoting *Singleton v. Eureka County*, 22 Nev. 91, 101, 35 P. 833, 836 (1894) (Bigelow, J., concurring)), and it would be difficult to conclude that zoning does not concern the administration of county government. Thus, the remaining question is whether S.B. 358 ''regulates'' Clark County's business.

Two prior decisions provide guidance on whether a law impermissibly *regulates* county business, as opposed to merely *affecting* county business. In the first, *Cauble v. Beemer*, the Legislature passed a law authorizing Washoe County to issue bonds in order to raise money to renovate a hospital. 64 Nev. 77, 177 P.2d 677 (1947). Because bond-issuance matters would typically need to be approved by the voters, the law was challenged as an unconstitutional regulation of Washoe County's business.

This court concluded that the bond-issuance law did not regulate Washoe County's business, but merely affected it. *Id.* at 90, 177 P.2d at 683. In drawing this distinction, the *Cauble* court reasoned: ''The provisions of the act relate entirely to the particular bond issue for the single hospital construction and reconstruction proj-

---

[2]Because we conclude that S.B. 358 is a local law, we need not consider whether it is also a special law under Section 20. *See Clean Water*, 127 Nev. at 310, 255 P.3d at 254 (reiterating that either a special law or a local law potentially violates Section 20).

ect.'' *Id.* In other words, the law had an isolated and temporary effect on the county's business, and was therefore permissible.

The second case is *Town of Pahrump v. Nye County*, 105 Nev. 227, 773 P.2d 1224 (1989). In *Town of Pahrump*, the Legislature enacted a law that removed Nye County's powers of planning, zoning, land division, and building inspection, giving these powers instead to the unincorporated town of Pahrump. *Id.* at 228, 773 P.2d at 1224. On appeal, it was argued that, pursuant to *Cauble*, this power transfer merely affected Nye County's business but did not regulate it. *Id.* at 229, 773 P.2d at 1225.

We disagreed and distinguished *Cauble*. ''The powers vested by the statute are broad and ongoing, and they substantially alter the power structure of the county. They do not relate only to a single item or project of county business, as do the statutes which we have previously held merely 'affect' county business.'' *Id.*

Thus, whether a law regulates or affects county business hinges on two criteria: (1) whether the challenged law governs a single item or project rather than multiple items or projects, and (2) whether the law's effect is temporary rather than permanent.

Here, S.B. 358 does not relate to a specific item or project in the way the bond-issuance legislation did. Rather, S.B. 358 has the amorphous goal of keeping urban sprawl away from Red Rock. Moreover, S.B. 358 permanently bans Clark County from ever rezoning the Adjacent Lands. Thus, we hold that S.B. 358 does regulate county business.

Since S.B. 358 is a local law operating over a particular locality that regulates Clark County's business by permanently divesting the County of its zoning power over the Adjacent Lands, S.B. 358 violates Article 4, Section 20.

*S.B. 358 violates Article 4, Section 21 because it is a local law that falls within an enumerated category of Section 20*

Article 4, Section 21 states that ''[i]n all cases enumerated in [Section 20], all laws shall be general and of uniform operation throughout the State.'' Nev. Const. art. 4, § 21. However, a local law is not *ipso facto* unconstitutional. *Clean Water*, 127 Nev. at 312, 255 P.3d at 255. This court has previously held:

> [I]f a statute be either a special or local law, or both, and comes within any one or more of the cases enumerated in [S]ection 20, such statute is unconstitutional; if the statute be special or local, or both, but does not come within any of the

cases enumerated in [S]ection 20, then its constitutionality depends upon whether a general [statewide] law can be made applicable [to the locality].

*Conservation District v. Beemer*, 56 Nev. 104, 117, 45 P.2d 779, 782-83 (1935).

Where a law is either local or special, such a law may be upheld where "(1) it does not come within any of the cases enumerated in Nevada Constitution Article 4, Section 20; and (2) a general law could not have been made applicable." *Clean Water*, 127 Nev. at 312, 255 P.3d at 255. Here, S.B. 358 is a local law *and* falls within one of Section 20's enumerated cases in that it regulates county business. Thus, as contemplated in *Conservation District*, S.B. 358 is unconstitutional.[3]

*S.B. 358 violates Section 25 because it establishes a system of county government that is not uniform throughout the State*

Article 4, Section 25 of the Nevada Constitution provides that "[t]he Legislature shall establish a system of County and Township Government which shall be uniform throughout the State." Nev. Const. art. 4, § 25.

As for whether S.B. 358 violates Section 25, this court's decision in *Town of Pahrump v. Nye County*, 105 Nev. 227, 773 P.2d 1224 (1989), is again instructive. In addition to its arguments regarding Section 20, Nye County also argued that the power-shifting legislation violated Section 25. To aid our analysis, we "defined a 'system of government,' as used in the context of [S]ection 25, as consisting of 'the powers, duties, and obligations placed upon [a] political organization.'" *Id.* at 228, 773 P.2d at 1224 (second alteration in original) (quoting *McDonald v. Beemer*, 67 Nev. 419, 426, 220 P.2d 217, 221 (1950)).

We then explained, "[s]ince zoning and planning fall within the powers, duties and obligations placed upon [a] political organization, they are precisely the type of activities that [S]ection 25 was intended to regulate." *Id.* at 228, 773 P.2d at 1225 (citation omitted) (internal quotation marks omitted). Thus, we held that "[b]ecause [the challenged law] delegates these powers away from Nye County to the unincorporated Town of Pahrump in a unique manner, one not utilized by other counties, it destroys the uniformity of the system of government among the counties." *Id.* at 228-29, 773 P.2d at 1225.

---

[3]Because we so hold, it is unnecessary to address whether the general law could have been made applicable.

The *Town of Pahrump* analysis applies with equal effect here. Having been divested of its zoning powers over the Adjacent Lands, Clark County now lacks exclusive control over zoning. Thus, in much the same way that the transfer of zoning authority from Nye County to Pahrump violated Section 25, we conclude that the divestment of Clark County's zoning authority via S.B. 358 does the same.

*S.B. 358 does not fall within any exception and thereby remains invalid*

As explained above, S.B. 358 violates Article 4, Sections 20, 21, and 25. The Ninth Circuit's final certified question is whether an exception applies that would render S.B. 358 valid despite otherwise violating the Nevada Constitution.

The Attorney General has advanced two distinct justifications for deeming S.B. 358 constitutional: (A) the emergency justification and (B) the natural resource justification. Below, we describe each justification and explain how they relate to the analyses of Sections 20, 21, and 25.

### Emergency justification

In considering prior legislation that amounted to local laws, this court has occasionally validated such laws to address an emergency. *See Quilici v. Strosnider*, 34 Nev. 9, 24-25, 115 P. 177, 180-81 (1911) (justifying local legislation removing the county seat from Dayton to Yerington in the wake of the Lyon County courthouse burning down); *Conservation District v. Beemer*, 56 Nev. at 117, 45 P.2d at 782-83 (justifying local legislation necessary to raise funds for a flood-prevention project); *Cauble v. Beemer*, 64 Nev. at 99, 177 P.2d at 687-88 (justifying local legislation because it was needed to reconstruct the county hospital). However, these cases discussed emergency justifications in relation to Article 4, Section 21, where local laws could not be made generally applicable. As such, these laws had passed the first part of the *Conservation District* test, falling outside the enumerated categories of Article 4, Section 20.

In the case at bar, S.B. 358 does not pass the first part of the *Conservation District* test, as the regulation of county business *is* enumerated in Section 20. Thus, the cases applying the emergency justification are distinguishable. This court has steadfastly held that we cannot ignore the constitutional limits placed on the Legislature in Sections 20 and 25, and we would be venturing into rather unstable territory if we were to expand the emergency justification beyond Section 21. *Cf. Clean Water*, 127 Nev. at 318, 255 P.3d at 260 (agreeing that the State's budget shortfall was an emergency

but declining to ignore Sections 20 and 21's proscriptions on local legislation).

### Natural resource justification

The natural resource justification derives from this court's decision in *State ex rel. List v. County of Douglas*, 90 Nev. 272, 524 P.2d 1271 (1974), a decision that seemingly blurred the line between what does and does not constitute local legislation for purposes of Section 20.

In *List*, the State of Nevada entered into an interstate compact with the State of California to create the Tahoe Regional Planning Agency. *Id.* at 274-75, 524 P.2d at 1272-73. The Agency's purpose was to conserve the natural resources in the Lake Tahoe Basin, which encompassed portions of both states. *Id.* To fund the Agency, the interstate compact required the five counties bordering Lake Tahoe (three in Nevada, two in California) to contribute money to the Agency. *Id.* at 275, 524 P.2d at 1273.

Douglas County challenged the compact, contending that it amounted to local legislation under Section 20 because only three of Nevada's counties were affected by it. This court disagreed, concluding that the compact was not "local," but "regional" in nature, stating:

> We . . . hold that the preservation of the region of the Lake Tahoe Basin as a natural resource for the enjoyment of all people sets it apart from the embrace of the commands of art. 4, §§ 20 and 21 of our State Constitution. Were we to rule otherwise, every interstate compact proposing to protect and preserve a common natural resource through an agency empowered to enact laws would be a nullity.

*Id.* at 279, 524 P.2d at 1275.

In its amicus brief to the Ninth Circuit, the Nevada Legislature focused on the first sentence in the above holding, arguing that *List* should be interpreted to mean that whenever legislation protects a natural resource for the enjoyment of people statewide, it should be deemed a general law and not a local law.

However, this argument is nearly identical to the one rejected in *Clean Water*. That is, even though the *Clean Water* budget law "advance[d] supervening statewide concerns that transcend[ed] local interests," the law still burdened only one particular locality. 127 Nev. at 313, 255 P.3d at 255-56.

In light of *Clean Water*, we interpret *List* as standing for the proposition that legislation is regional (and thus not local in violation of Article 4, Section 20) when it affects certain counties as part of a broader interstate agreement. *Clean Water*, 127 Nev. at

312, 255 P.3d at 255 ("A law is local if it operates over a particular locality instead of over the whole territory of the State." (quotation omitted)).

In the above excerpt, we specifically noted that our reasoning in *List* was predicated on the existence of an interstate compact. *List*, 90 Nev. at 279, 524 P.2d at 1275. We also specifically concluded that "[s]ince the [Lake Tahoe] Basin lies within two states, the concept of the [interstate c]ompact is regional in character." *Id.* at 277, 524 P.2d at 1274. Thus, this court assigned the legislation a label of regional because two states were affected by the law, and not just counties within Nevada. Because S.B. 358 affects only one county in one state and does not require cooperation from another state to protect Red Rock, it is distinguishable from *List*.

In sum, although this court has concluded that an emergency may justify the need for local legislation in lieu of general legislation, Article 4, Section 21 does not permit local legislation in lieu of general legislation where such legislation falls within an enumerated category of Article 4, Section 20. Moreover, to the extent that *List* can be interpreted as providing a natural resource justification, such an interpretation has been rejected by our recent analysis in *Clean Water* of what constitutes a local law under Section 20.

## CONCLUSION

S.B. 358 is a local law that regulates county business. As such, it violates Article 4, Sections 20 and 21 of the Nevada Constitution. S.B. 358 also violates Article 4, Section 25 by establishing a nonuniform system of county government. Furthermore, S.B. 358 does not fall within any recognized exception to the Nevada Constitution. Accordingly, we answer the first three certified questions in the affirmative and the last certified question in the negative.

GIBBONS, HARDESTY, DOUGLAS, CHERRY, and SAITTA, JJ., concur.