132 Nev., Advance Opinion 4

IN THE SUPREME COURT OF THE STATE OF NEVADA

CITY OF FERNLEY, NEVADA, A NEVADA MUNICIPAL CORPORATION, Appellant,
vs.
THE STATE OF NEVADA, DEPARTMENT OF TAXATION; THE HONORABLE DAN SCHWARTZ, IN HIS CAPACITY AS TREASURER OF THE STATE OF NEVADA; AND THE LEGISLATURE OF THE STATE OF NEVADA, Respondents.

No. 66851

FILED

JAN 14 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment in a tax matter. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Affirmed.*

Brownstein Hyatt Farber Schreck, LLP, and Joshua J. Hicks, Las Vegas; Brandi L. Jensen, City Attorney, Fernley; Holley, Driggs, Walch, Fine, Wray, Puzey, Thompson and Clark V. Vellis, Reno,
for Appellant.

Adam Paul Laxalt, Attorney General, Gina C. Session, Chief Deputy Attorney General, and Andrea Nichols, Senior Deputy Attorney General, Reno; Brenda J. Erdoes, Legislative Counsel, Kevin C. Powers, Chief Litigation Counsel, and J. Daniel Yu, Principal Deputy Legislative Counsel, Carson City, for Respondents.

16-01248

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

The Nevada Constitution prohibits the Legislature from passing local or special laws "[f]or the assessment and collection of taxes for state, county, and township purposes," Nev. Const. art. 4, § 20, and further requires that "[i]n all cases enumerated in [Section 20], and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State." Nev. Const. art. 4, § 21; *Clean Water Coal. v. The M Resort, LLC*, 127 Nev. 301, 310, 255 P.3d 247, 253-54 (2011). Here, we are asked to decide whether the Local Government Tax Distribution Account under NRS 360.660 is special or local legislation in violation of Sections 20 and 21 of the Nevada Constitution. We conclude that the district court properly found the Local Government Tax Distribution Account to be general legislation. Accordingly, we affirm the district court's order granting summary judgment.

I.

A.

Some background on the C-Tax system is needed to make sense of the legal issues presented by this appeal. In 1997, the Legislature enacted the Local Government Tax Distribution Account, referred to as the C-Tax. 1997 Nev. Stat., ch. 660, § 1, at 3278. The C-Tax is designed to fund local governments and their corresponding entities by "creat[ing] a system that would be a little bit more responsive to where growth is occurring within each one of the counties." Hearing on S.C.R. 40 Before the Senate Comm. on Government Affairs, 69th Leg. (Nev.,

SUPREME COURT
OF
NEVADA

(O) 1947A

March 31, 1997). The C-Tax replaced a series of different systems; "some of [the previous systems] dealt with population solely, some of them dealt with assessed valuations, some of them included counties, some of them excluded counties, and various combinations in between." *Id.* Under previous systems, new cities would emerge to take advantage of their share in revenues without necessarily providing any benefit to the public. The previous systems also created an atmosphere of competition instead of cooperation. For example, before the C-Tax, "if one entity was to dissolve and be absorbed by another . . . the allowed revenues that they had from various taxes would otherwise go away" instead of allowing entities to receive the revenues from assuming new responsibilities. *Id.*

To eliminate these inefficiencies, the Legislature "consolidate[d] a series of six different distribution formulas into one that . . . is also more responsive to growth . . . and in the long run, proves to be a more simplified and effective way of distributing the six revenues." *Id.* It is from this consolidation that the C-Tax derives its name: the Consolidation Tax. The C-Tax comprises six different tax pools: liquor tax, cigarette tax, real property transfer tax, basic city-county relief tax, supplemental city-county relief tax, and the basic motor vehicle privilege tax.

All of the revenue from the six different tax pools is consolidated into the C-Tax Account, which is regulated by the Department of Taxation. The C-Tax Account is then distributed to local governments under a two-tier system. First, as per the statutory formula, the State disburses revenue to Nevada's 17 counties under the Tier 1

distribution.[1] Second, following a different statutory formula, the counties disburse revenue to qualifying Tier 2 entities in their county. Only three types of entities qualify for a Tier 2 distribution: (1) Enterprise Districts, such as water, sewer, television, and sanitation services; (2) Local Governments, including counties, cities, and towns; and (3) Special Districts, such as fire departments, hospitals, and public libraries. *See* NRS 360.620; NRS 360.650.

Under the Tier 2 distribution system, there are two components: base distributions and excess distributions. NRS 360.680; NRS 360.690. If a Tier 2 entity—such as a county, city, or town—received taxes prior to July 1, 1998, it will continue to receive that same base amount, which increases as per the Consumer Price Index. NRS 360.670. After all of the base amounts are paid, if there is a surplus in the account, it is distributed as an "excess" distribution to the Tier 2 entities (except Enterprise Districts). NRS 360.690. The excess distributions are calculated using a statutory formula that measures changes in population and assessed valuation of taxable property. NRS 360.690(4)-(9).

If a Tier 2 entity—such as a city or a town—did not exist before July 1, 1998, or did exist, but wants to increase its base amount, there are three ways to qualify for an increased C-Tax distribution. First, a new local government is eligible for increased C-Tax distributions if it provides police protection and at least two of the following services: (1) fire protection; (2) construction, maintenance, and repair of roads; or (3) parks and recreation. NRS 360.740. Second, a new local government can

---

[1]Under the C-Tax system, Carson City is treated as a county for purposes of Tier 1 distributions. NRS 360.610.

assume the functions of another local government (i.e., merger of entities). NRS 354.598747. Third, a new local government can enter into a cooperative "interlocal" agreement with another local government (i.e., taking over services provided by the other local government or agreeing to pay costs). NRS 360.730.

All three options involve the new local government providing services by either creating or assuming the responsibilities for the services. The Legislature feared that new entities could form and take money away from counties without having "any of the responsibility to share in any of the social parts of government." Hearing on S.C.R. 40 Before the Senate Comm. on Government Affairs, 69th Leg. (Nev., March 31, 1997). These options demonstrate that the object of the C-Tax was to foster general-purpose governments. Hearing on S.C.R. 40 Before the Senate Comm. on Government Affairs, 69th Leg. (Nev., April 14, 1997) ("[T]he distribution formula was a deliberate attempt to promote the formation of general-purpose governments, as opposed to special-purpose governments."). The Legislature found general-purpose governments desirable because "of all the little forms of government that we have . . . they can make a conscious decision, on an annual basis, about service levels." Hearing on S.C.R. 40 Before the Senate Comm. on Government Affairs, 69th Leg. (Nev., March 31, 1997).

B.

When the Legislature enacted the C-Tax system in 1997, Fernley was an unincorporated town, thus qualifying for a Tier 2 distribution as a local government entity. To facilitate the transition between the previous tax system and the C-Tax system, the Legislature "would begin in the base year with the amounts of revenue that [the Tier 2 entities] otherwise would have realized under the former series of

distribution formulas." *Id.* Thus, Fernley's initial year of C-Tax distributions—base and excess—were calculated based on its status as an unincorporated town.

In 1998, Fernley began taking the steps required by NRS Chapter 266 to bring about its incorporation. One of the required steps was to submit an incorporation petition, which must include the plans for providing police protection, fire protection, road maintenance, and other governmental services, plus a cost estimate and sources of revenue to pay for those services. Over the next two years, Fernley corresponded with the Department of Taxation to obtain estimates of the C-Tax distributions it would receive if it incorporated. However, the Department of Taxation informed Fernley on multiple occasions that it would not receive increased C-Tax distributions if it did not provide services under NRS 360.740, assume responsibilities of another government, or enter into an interlocal agreement. At the time, Lyon County provided Fernley's fire protection, police protection, and construction, maintenance, and repair of roads, while also funding Fernley's three public parks.

In its incorporation petition, Fernley planned to provide governmental services after it incorporated. However, this plan was contingent upon Lyon County approving an interlocal agreement in which Lyon County would continue providing those services while Fernley negotiated to fund those services. The Committee on Local Government Finance expressed concern about Fernley's plan because the plan depended "largely on how willing and how able the city is to reach an agreement with the County." But, the Committee went on to conclude that "if indeed, the working with the County goes smoothly I think we

(0) 1947A

clearly have the ability to provide the revenues needed for a city [but if] the County says no, go take a walk, then you've got big problems."

Despite notice that its C-Tax distributions may not increase unless it creates, assumes, or enters into an interlocal agreement to provide services, Fernley incorporated on July 1, 2001. Fernley is the only government entity to incorporate after the enactment of the C-Tax. After its incorporation, Fernley neither entered into an interlocal agreement with Lyon County, nor did Fernley create or assume public services. Instead, Lyon County continued to provide Fernley with all of its services.

Although Fernley incorporated as a city, its C-Tax base distribution was first created when Fernley was an unincorporated town. Because Fernley did not create, assume, or enter into an interlocal agreement to provide services, Fernley never became eligible to receive an increase in its C-Tax distribution. Without the increase, Fernley's C-Tax distribution only grew with an adjusted percentage rate to reflect the Consumer Price Index, even though Fernley's population more than doubled. Specifically, Fernley's population grew from 8,000 people in 1997 to 19,000 people in 2015, which accounts for 36 percent of Lyon County's population.

Fernley argues that it receives far less revenue than other cities that are similar in population and assessed valuation, such as Mesquite, Boulder City, and Elko. For example, in 2013, Fernley received $133,050.30 in C-Tax distributions, while Mesquite, Boulder City, and Elko received $7,336,084.71, $8,885,664.66, and $13,521,334.12, respectively. Although Fernley maintains that the C-Tax is unfair, Fernley recognizes that cities such as Mesquite, Boulder City, and Elko all

provide the traditional general-purpose governmental services, while Fernley does not.

Before bringing this litigation, in an effort to explore its ability to obtain an increase in its C-Tax distribution, Fernley sought an advisory opinion from the Department of Taxation. In the Department's advisory opinion, dated December 20, 2011, it told Fernley that Fernley is not eligible to create services under NRS 360.740—police protection and two other services—and thereby gain an increase in C-Tax distributions. The Department stated that the language of NRS 360.740[2] only allows a new local government to create those services within one year of its incorporation.[3] Because Fernley did not create police protection services and two other services within its first year of incorporation in 2001, the Department opined that Fernley could only reach its goal of receiving a C-Tax distribution increase if it assumed the services of another local

_____

[2]The relevant language of the statute is as follows:

> *On or before December 31 of the year immediately preceding the first fiscal year* that the local government or special district would receive money from the Account, a governing body that submits a request pursuant to subsection 1 must: (a) submit the request to the Executive Director; and (b) provide copies of the request . . . .

NRS 360.740(2) (emphasis added).

[3]Although the advisory opinion interpreted NRS 360.740 to only give a one-year window in which Fernley could create services, the State has reversed course in its answering brief on this appeal and now maintains that the advisory opinion was incorrect and that, in fact, the one year runs, not from the date of incorporation, but from the date the city commits to provide services.

government or entered into an interlocal agreement. Although Fernley did attempt to assume services or enter into an interlocal agreement with Lyon County, its attempts were unsuccessful. Consequently, Fernley filed its complaint on June 6, 2012, seeking declaratory and injunctive relief for violations of the Separation of Powers Doctrine and the prohibition on special or local legislation under the Nevada Constitution, Article 4, Section 20.[4] On October 6, 2014, the district court entered summary judgment in favor of the State.

## II.

This court reviews a district court's order granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if the pleadings and evidence demonstrate that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Id.*

---

[4]Fernley initially sought money damages of $42,670,000, but abandoned that claim on appeal. Nevertheless, Fernley appeals the district court's order awarding costs of $8,489.04 to the State, claiming that it should be immune from an award of costs because its lawsuit involved a good-faith challenge to the C-Tax. This court does not disturb an award of costs absent an abuse of discretion, but does require that the award be authorized by a statute, rule, or contract. *McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 673, 137 P.3d 1110, 1129 (2006). NRS 18.020(3) provides that "[c]osts must be allowed of course to the prevailing party against any adverse party against whom judgment is rendered, in the following cases: . . . (3) In an action for the recovery of money or damages, where the plaintiff seeks to recover more than $2,500." Also, NRS 18.025 prohibits the district court from reducing or refusing costs solely because the prevailing party is the State. We recognize Fernley's challenge as brought in good faith but cannot conclude under these statutes that the district court abused its discretion in awarding costs to the State. We therefore decline to disturb the cost award.

A.

The district court granted the State's motion for summary judgment, concluding the complaint was time-barred. It did so based on its holding that NRS 11.220—a default statute of limitations period of four years—applies to Fernley's constitutional claims because "no other specific statute prescribes a different limitations period for those claims."

Under the Nevada Revised Statutes, an action for relief that is not otherwise provided for "must be commenced within 4 years after the cause of action shall have accrued." NRS 11.220. The statute of limitations serves to prohibit suits "after a period of time that follows the accrual of the cause of action." *FDIC v. Rhodes*, 130 Nev., Adv. Op. 88, 336 P.3d 961, 965 (2014). "[S]uch limitation periods are meant to provide a concrete time frame within which a plaintiff must file a lawsuit and after which a defendant is afforded a level of security." *Winn v. Sunrise Hosp. & Med. Ctr.*, 128 Nev., Adv. Op. 23, 277 P.3d 458, 465 (2012). The public policies embodied in statutes of limitation are important considerations because they "stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs." *Peterson v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 19 (1990).

Although the statute of limitations may time-bar a claim, it does not prohibit this court from reviewing the constitutionality of an enacted statute. *See Black v. Ball Janitorial Serv., Inc.*, 730 P.2d 510, 515 (Okla. 1986) (reaching the merits of a special legislation constitutional challenge even after holding the statute of limitations had passed); *see also State ex rel. State Bd. of Equalization v. Bakst*, 122 Nev. 1403, 1409, 148 P.3d 717, 721 (2006) ("[W]e will declare a government action invalid if it violates the Constitution."); *King v. Bd. of Regents of Univ. of Nev.*, 65 Nev. 533, 542, 200 P.2d 221, 225 (1948) ("It is undoubtedly the duty of

Supreme Court
OF
Nevada

(O) 1947A

10

courts to uphold statutes passed by the legislature, unless their unconstitutionality clearly appears, in which case it is equally their duty to declare them null." (quoting *State v. Arrington*, 18 Nev. 412, 4 P. 735, 737 (1884))).

The Legislature has considerable law-making authority, but it is not unlimited. *Clean Water Coal.*, 127 Nev. at 309, 255 P.3d at 253 (interpreting the constitutionality of legislation under Nev. Const. art. 4, §§ 20-21); *We the People Nev. ex rel. Angle v. Miller*, 124 Nev. 874, 890 n.55, 192 P.3d 1166, 1177 n.55 (2008). "The Nevada Constitution is the 'supreme law of the state,' which 'control[s] over any conflicting statutory provisions.'" *Thomas v. Nev. Yellow Cab Corp.*, 130 Nev., Adv. Op. 52, 327 P.3d 518, 521 (2014) (quoting *Clean Water Coal.*, 127 Nev. at 309, 255 P.3d at 253). "It is fundamental to our federal, constitutional system of government that a state legislature 'has not the power to enact any law conflicting with the federal constitution, the laws of congress, or the constitution of its particular State.'" *Thomas*, 130 Nev., Adv. Op. 52, 327 P.3d at 520-21 (quoting *State v. Rhodes*, 3 Nev. 240, 250 (1867)).

While this court will try to construe statutes to be in harmony with the constitution, if the "statute 'is irreconcilably repugnant' to a constitutional amendment, the statute is deemed to have been impliedly repealed by the amendment." *Thomas*, 130 Nev., Adv. Op. 52, 327 P.3d at 521 (quoting *Mengelkamp v. List*, 88 Nev. 542, 545-46, 501 P.2d 1032, 1034 (1972)). "Statutes are construed to accord with constitutions, not vice versa." *Thomas*, 130 Nev., Adv. Op. 52, 327 P.3d at 521. "If the Legislature could change the Constitution by ordinary enactment, no longer would the Constitution be superior paramount law, unchangeable by ordinary means. It would be on a level with ordinary legislative acts,

and, like other acts, alterable when the legislature shall please to alter it." *Id.* at 522 (internal quotations omitted). Therefore, "the principle of constitutional supremacy prevents the Nevada Legislature from creating exceptions to the rights and privileges protected by Nevada's Constitution." *Id.*

The statute of limitations applies differently depending on the type of relief sought. *Taxpayers Allied for Constitutional Taxation v. Wayne Cty.*, 537 N.W.2d 596, 599 (Mich. 1995); *Kirn v. Noyes*, 31 N.Y.S.2d 90, 93 (App. Div. 1941) (holding that no statutory limitation applies "when a declaratory judgment will serve a practical end in determining and stabilizing an uncertain or disputed jural question, either as to present or prospective obligations"). There are two types of relief: retrospective relief, such as money damages, and prospective relief, such as injunctive or declaratory relief. *Tenneco, Inc. v. Amerisure Mut. Ins. Co.*, 761 N.W.2d 846, 862-63 (Mich. Ct. App. 2008). For example, in *Taxpayers Allied*, taxpayers challenged a Michigan tax statute claiming that it exceeded the constitutional limit. 537 N.W.2d at 599. The taxpayers sought a tax refund and also declaratory relief from future application of the allegedly unconstitutional statute. *Id.* However, the county sought to dismiss the taxpayers' challenge, arguing that the one-year statute of limitations period had expired. *Id.* The Michigan Supreme Court distinguished between the taxpayers' rights to sue for a refund and their ability to sue to prospectively vindicate constitutional rights. *Id.*

> Taxpayers may sue for a refund within one year of the date the tax was assessed. Even if taxpayers cannot obtain refunds for past tax payments exceeding the constitutional limit because they did not dispute them within one year of the date the taxes were assessed, the constitutional right does

> not disappear because they retain the right to
> prevent future violations of their rights.

*Id.* The court concluded that the statutes of limitations applicable to a refund claim did not bar their declaratory judgment claims. *Id.* at 601. Consequently, the one-year statute of limitations under the Michigan statute "does not prevent a taxpayer from seeking to enjoin a governmental unit from imposing on him in the future taxes that violate the [constitution]. To hold otherwise would truncate the constitutional right." *Id.* at 600.[5]

Here, Fernley challenges the constitutionality of the C-Tax under Article 4, Sections 20 and 21 of the Nevada Constitution and the separation of powers doctrine.[6] Because Fernley was aware at the time of

---

[5]Although some courts have held that the statute of limitations does apply to declaratory relief, those issues involved a personal injury and not a constitutional challenge to the prospective application of an assertedly invalid statute. *See, e.g., Snyder v. Cal. Ins. Guarantee Ass'n*, 177 Cal. Rptr. 3d 853, 861 (Ct. App. 2014) (seeking declaratory relief to determine if money is owed to plaintiff); *Hill v. Thompson*, 297 S.W.3d 892, 898 (Ky. Ct. App. 2009) (prisoner seeking declaratory relief that his due process rights were violated when he did not receive awards of meritorious good time credit).

[6]We decline to address the merits of Fernley's separation of powers challenge because Fernley, as a political subdivision, does not have standing to sue under the separation of powers doctrine. *See City of Reno v. Washoe Cty.*, 94 Nev. 327, 331-32, 580 P.2d 460, 463 (1978) (refusing to give standing to political subdivisions to enforce constitutional provisions that were not created to protect political subdivisions, but allowing standing for challenges to legislation as a local or special law); *State ex rel. List v. Douglas Cty.*, 90 Nev. 272, 280, 524 P.2d 1271, 1276 (1974) *overruled on other grounds by Att'y Gen. v. Gypsum Res.*, 129 Nev., Adv. Op. 4. 294 P.3d 404 (2013) (holding that a political subdivision does not have standing under the Fourteenth Amendment "in opposition to the will of its creator"). Further, the language of the separation of powers

*continued on next page...*

its incorporation in 2001 that its C-Tax base distributions would be calculated as of that date, this court used 2001 as the beginning of its limitations period.[7] In this case, NRS 11.220 applies to any action for relief that was not specifically provided for. Under NRS 11.220—the catch-all statute of limitations period of four years—Fernley had until July 1, 2005, to file its complaint. Nevertheless, Fernley did not file its complaint until June 6, 2012. Accordingly, the statute of limitations bars Fernley's claim for retrospective relief.

But the statute of limitations does not bar Fernley's claims for injunctive and declaratory relief from an allegedly unconstitutional statute. To hold otherwise would undermine the doctrine of constitutional supremacy. Similar to *Taxpayers Allied*, Fernley originally had two claims for relief: (1) retrospective relief in the form of past money damages that Fernley did not receive from the allegedly unconstitutional C-Tax

---

*...continued*

provision in the Constitution does not extend any protection to political subdivisions. Nev. Const. art. 3, § 1 ("The powers of the Government of the *State* of Nevada shall be divided into three separate departments . . . ." (emphasis added)).

[7]In 2012, on its first time before this court, the State sought writ relief, which this court granted for the federal constitutional claims. *State Dep't of Taxation v. First Judicial Dist. Court*, Docket No. 62050 (Order Granting in Part and Denying in Part Petition for a Writ of Mandamus, January 25, 2013). This court held that Nevada's statute of limitations for personal injury claims time-bars Fernley's federal constitutional claims. *Id.* This court acknowledged the City of Fernley's notice of its C-Tax distributions not increasing: "Neither party disputes that, at the time of the City's incorporation in 2001, the City was aware that absent specific circumstances, its base consolidated-tax distributions would be set by its previous distributions and would remain at that level." *Id.*

distributions;[8] and (2) prospective relief in the form of an injunction and declaratory judgment from future application of the allegedly unconstitutional statute. Like *Taxpayers Allied*, where the statute of limitations had already expired for the retrospective relief, 537 N.W.2d at 601, here, the four-year limitations period expired in July 2005—almost seven years before Fernley filed its complaint. Nevertheless, similar to the court in *Taxpayers Allied*, we hold that the failure to file a claim within the statute of limitations period does not render all relief time-barred because claimants retain the right to prevent future violations of their constitutional rights.

## B.

Fernley argues that the C-Tax violates Article 4, Sections 20 and 21 of the Nevada Constitution. The district court found that the C-Tax is a general law—therefore rendering Article 4, Sections 20 and 21 inapplicable—because the law applies equally to all similarly situated entities. We agree.

The Nevada Constitution prohibits the Legislature from passing local or special laws "[f]or the assessment and collection of taxes for state, county, and township purposes," Nev. Const. art. 4, § 20, and further requires that "[i]n all cases enumerated in [Section 20], and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State." Nev. Const. art. 4, § 21; *Clean Water Coal.*, 127 Nev. at 309, 255 P.3d at 253-54. This court

---

[8]Although Fernley dropped its claim for retrospective relief on appeal, Fernley still prays for prospective relief.

adheres to the following explanation on the prohibition against special or local laws under the Nevada Constitution:

> [I]f a statute be either a special or local law, or both, and comes within any one or more of the cases enumerated in section 20, such statute is unconstitutional; if the statute be special or local, or both, but does not come within any of the cases enumerated in section 20, then its constitutionality depends upon whether a general law can be made applicable.

*Clean Water Coal.*, 127 Nev. at 310, 255 P.3d at 254 (quoting *Conservation Dist. v. Beemer*, 56 Nev. 104, 116, 45 P.2d 779, 782 (1935)). Therefore, the first inquiry is whether the legislation is general or whether it is special or local. *See Youngs v. Hall*, 9 Nev. 212, 218 (1874).

1.

A law is general if it is "operative alike upon all persons similarly situated," but "need not be applicable to all counties in the state." *Id.* at 222. Stated more recently, "[a] law is general when it applies equally to all persons embraced in a class founded upon some natural, intrinsic, or constitutional distinction." *Clean Water Coal.*, 127 Nev. at 311, 255 P.3d at 254 (quoting *Colman v. Utah State Land Bd.*, 795 P.2d 622, 636 (Utah 1990)). The purpose underlying the general law requirement "is that when a statute affects the entire state, it is more likely to have been adequately considered by all members of the Legislature, whereas a localized statute is not apt to be considered seriously by those who are not affected by it." *Id.* at 311, 255 P.3d at 254.

Conversely, a law is considered local "if it operates over 'a particular locality instead of over the whole territory of the State.'" *Att'y Gen. v. Gypsum Res.*, 129 Nev., Adv. Op. 4, 294 P.3d 404, 407 (2013)

Supreme Court
OF
Nevada

(O) 1947A

16

(quoting *Damus v. Cty. of Clark*, 93 Nev. 512, 516, 569 P.2d 933, 935 (1977)). Further, a law is considered "special legislation if it confers particular privileges or imposes peculiar disabilities, or burdensome conditions in the exercise of a common right; upon a class of persons arbitrarily selected, from the general body of *those who stand in precisely the same relation to the subject of the law.*" *Clean Water Coal.*, 127 Nev. at 311, 255 P.3d at 254 (emphasis added) (quoting *Colman*, 795 P.3d at 636).

In *Clean Water Coalition*, this court considered whether legislation that required the Clean Water Coalition (CWC)—a political subdivision of the State—to turn over $62 million to benefit the state general fund was a special or local law in violation of the Nevada Constitution. 127 Nev. at 305, 255 P.3d at 250. The Legislature enacted the law, A.B. 6, Section 18, to confront a statewide budget crisis. *Id.* However, the law only applied to the CWC. *Id.* While drafting the law, "the Legislature found and declared that '[a] general law cannot be made applicable to the provisions of this section because of special circumstances.'" *Id.* at 313, 255 P.3d at 255. This court stated that, while it accords great weight to legislative findings when interpreting a statute, those findings are not binding. *Id.* Nonetheless, regarding A.B. 6, this court found that "[t]he Legislature's express finding and declaration that section 18 is not a general law, however, is consistent with the bill section's text." *Id.* Hence, this court found that A.B. 6, Section 18 was not a general law because it applied only to the CWC. *Id.* at 305, 255 P.3d at 250.

Here, the C-Tax is a general law. Although the Legislature found that "a general law cannot be made applicable for all provisions" of

the C-Tax,[9] this court is not bound by the legislative findings, as this court held in *Clean Water Coalition*. Instead, similar to *Clean Water Coalition*, this court may look at the actual text to determine if it is a general law or special or local law. In this case, Fernley does not challenge the C-Tax classifications at the time of its enactment when Fernley was an unincorporated town. At the time of enactment, the C-Tax did not single out Fernley; rather, it made constitutional distinctions to determine C-Tax distributions based on the old tax formula, assessed property values, and population. Fernley has not made the argument that its initial C-Tax distribution as an unincorporated town violates any laws. Instead, Fernley argues that the State's refusal to award more C-Tax distributions to Fernley after its changed status as an incorporated city singles out Fernley and only maintains the status quo of "participants in the system at that time," and should, therefore, be held unconstitutional.

Fernley cites *Clean Water Coalition* for support because Fernley is the only city to have incorporated after the enactment of the C-Tax—making it the only entity to be burdened, like CWC. However, Fernley's situation is distinguishable from the CWC's. Unlike CWC,

---

[9]The beginning of the C-Tax statute states the following:

> WHEREAS, The legislature finds and declares that *a general law cannot be made applicable* for all provisions of this act because of the economic diversity of the local governments of this state, the unusual growth patterns in certain of those local governments and the special conditions experienced in certain counties related to the need to provide basic services.

S.B. 254, 69th Leg. (Nev. 1997) (emphasis added).

where it was singled out in the legislation, here, Fernley was not singled out, but was classified with similarly situated local governments. When Fernley incorporated without creating or assuming services, it singled itself out from increased C-Tax distributions.

2.

The State argues that the distribution classifications apply uniformly to all those entities that are similarly situated, with which the district court agreed. Further, the State contends that under this court's rational basis test, the Legislature had a legitimate government purpose for enacting the C-Tax with different classifications because it wanted to promote general-purpose governments.

Under the Nevada Constitution, Article 4, the validity of a statute "is determined by ascertaining its effect, and not by the number of counties coming within its scope." *Reid v. Woofter*, 88 Nev. 378, 380, 498 P.2d 361, 362 (1972). For example, in *Reid*, this court rejected the argument that a statute violated Sections 20 and 21 because it only applied to certain townships based on population. *Id.* This court concluded that "a statute is not rendered an unconstitutional local or special law merely because it applies to only one or a few areas due to their population, for if there were others of the same population they too would be included." *Id.* The fact that only two counties fell within the statute did not matter because the statute's "operation and effect is so framed as to apply in the future to all counties coming within its designated class" rendering it neither local nor special legislation under Sections 20 and 21. *Id.*

When a "classification applies prospectively to all counties which might come within its designated class, it is neither local nor special." *Clark Cty. ex rel. Cty. Comm'rs v. City of Las Vegas ex rel. Bd. of*

*City Comm'rs*, 97 Nev. 260, 263, 628 P.2d 1120, 1122 (1981). The legislative classification still "must be rationally related to the subject matter and must not create odious or absurd distinctions." *Id.* at 264, 628 P.2d at 1122 (citing *Anthony v. State*, 94 Nev. 338, 341, 580 P.2d 939, 941 (1978)). Thus, in *Clark County*, this court invalidated subsequent amendments to a tax system that specified, rather than classified, recipients. *Id.* Because the tax system, as amended, specified recipients, prospective counties had no classification into which they could fit. *Id.* Therefore, this court invalidated the amendments, rendering the law as it existed prior to the amendments as controlling. *Id.* at 265, 628 P.2d at 1123.

This case most closely resembles *Reid*, where this court classified legislation as general even though it currently affected a small number of counties. Similarly, here, Fernley is the only city to have incorporated after the enactment of the C-Tax, rendering it the only one with an outdated base distribution. Nevertheless, the way that the C-Tax system is designed, if another town decided to incorporate today without creating or assuming any public services, it would occupy the same position as Fernley. Further, if Fernley created or assumed public services, it could achieve the same classification as the other cities that Fernley compares itself to, such as Boulder City, Mesquite, and Elko. *See* NRS 360.740; NRS 354.598747; *see also supra* note 3 (State concedes this option remains open to Fernley).

Unlike *Clark County*, where the amendments to the tax system specified counties, rather than classified counties, 97 Nev. at 263-64, 628 P.2d at 1122, here, the C-Tax does not specify recipients. Instead, the C-Tax has different formulas it uses for any entity that falls within

SUPREME COURT
OF
NEVADA

(O) 1947A

that classification. NRS 360.690. The classifications that the Legislature used when enacting the C-Tax are rationally related to achieve that end, as required by this court in *Clark County*, 97 Nev. at 264, 628 P.2d at 1122. The Legislature enacted the C-Tax to encourage general-purpose governments that provide public services, such as police and fire protection. Additionally, the Legislature wanted to avoid new local governments that emerge to take advantage of extra tax funds without providing any benefit to its residents.

In this case, Fernley presents the exact situation the Legislature evidently sought to avoid: Fernley incorporated hoping to collect more tax distributions, but it has not provided any new benefits to its residents, beyond those it provided when it was an unincorporated town, nor has it assumed the fiscal responsibility of Lyon County for providing its services. If Fernley did create or assume public services under one or more of the three different methods provided by NRS 360.600 *et seq.*, it would achieve the legislatively set goals and receive the increased C-Tax distributions; having not done so, its C-Tax base distribution stands. Therefore, the C-Tax classifications are rationally related to achieve its legitimate government interests of promoting general-purpose governments.

### III.

The C-Tax system is a general law that applies neutrally to local government entities and is based on classifications that are rationally related to achieving the Legislature's legitimate government objective of promoting general-purpose governments that have public services, such as police and fire protection.

We therefore affirm the district court's grant of summary judgment.

_____, J.
Pickering

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

SUPREME COURT
OF
NEVADA

(D) 1947A